St. Louis, Iron Mountain & Southern Ry. Co. *v.* Furlow.

Opinion delivered March 1, 1909.

1. Evidence—varying written contract by parol.—Where a bill of lading stated that the goods were shipped under a limited liability, the rate agreed upon "being less than the rate charged for shipments transported at carrier's risk," it was competent to show what the latter rate was, as such evidence would not vary the written contract. (Page 410.)

2. Instructions—when harmless though abstract.—An instruction to the effect that a carrier is liable for negligent delay in shipping livestock tendered for carriage was harmless though abstract where plaintiffs proved merely that their stock was injured to the amount of their recovery by careless handling in transit. (Page 410.)

3. Carriers—limitation of liability—validity.—A stipulation in a contract for shipment of livestock that the shipper will give notice in

writing of any claim for loss or injury thereto to some agent of the
delivering line before the stock is removed and within one day after
delivery of the stock is valid if reasonable and based upon a valuable
consideration, and is not prohibited in the case of interstate ship-
ments by the act of Congress approved June 29, 1906, known as the
Hepburn Act.   (Page 410.)

4. SAME—REASONABLENESS OF LIMITATION FOR JURY WHEN.—Where a con-
tract for the shipment of livestock stipulated that notice of any
claim of damages thereto should be given to an agent of the delivering
carrier within one day after delivery, and the nearest agent of such
carrier was thirty-five miles from the delivery point, it was a ques-
tion for the jury under proper instructions whether such contract
allowed the shipper a reasonable time in which to make complaint.
(Page 411.)

5. SAME—SUFFICIENCY OF NOTICE OF DAMAGES.—A stipulation in a bill of
lading that notice in writing of any claim for damages shall be given
within one day after delivery at destination to the delivering carrier
requires actual notice, so that notice by mail would not be sufficient
unless received within the required time.   (Page 412.)

6. SAME—EFFECT OF STIPULATING FOR UNREASONABLY SHORT NOTICE.—
Where a contract limiting the liability of a carrier in the shipment of
livestock fixes an unreasonably short period of time in which the
shipper is to give notice of any claim of damages thereto, the entire
stipulation is invalid and not enforceable.   (Page 412.)

7. SAME—CONNECTING LINES—LIABILITY OF INITIAL CARRIER.—Under the
act of Congress of June 29, 1906, known as the Hepburn Act, a car-
rier is forbidden to limit its liability to damage to stock which occurred
while the stock was in its possession.   (Page 412.)

Appeal from Ouachita Circuit Court; *George W. Hays,*
Judge; reversed.

*E. B. Kinsworthy* and *Lewis Rhoton,* for appellant.

1.   The evidence offered by appellant to show what the rate
was under the contract entered into was only explanatory of
the contract, in nowise conflicted with it nor tended to vary or
change its terms.   The evidence was competent, and its exclu-
sion was prejudicial.   62 Ark. 330; 53 Ark. 4; 81 Ark. 374;
83 Ark. 163; 63 Ark. 475.

2.   Instruction No. 5 given at appellant's request was a
correct declaration of the law; and in the face of that instruction
it was error to give the 6th instruction requested by appellee.
It was also error to refuse instructions 8 and 9 requested by ap-

pellant. 76 Ark. 69; *Id.* 224; 55 Ark. 397; 74 Ark. 585; 77 Ark. 64.

3. The first instruction given at appellee's request is abstract, without evidence to support it, and misleading, since there does not appear to have been any damage occasioned by delay in shipment. 74 'Ark. 19; 77 Ark. 20; 70 Ark. 441; *Id.* 136; 69 Ark. 380; 3 Crawford's Digest, 931, 2, 3, 4.

4. This court has sustained the fifth paragraph of the contract; and the burden of proving that the required notice was given is upon the shipper. 63 Ark. 331; 82 Ark. 353; 67 Ark. 407; 1 Hutchinson on Carriers, 442.

*Thornton & Thornton,* for appellee.

Battle, J. The complaint of plaintiffs, W. H. Furlow and B. M. Bigers, against the defendant, St. Louis, Iron Mountain & Southern Railway Company, embraces two claims for damages, one for delay in transportation of plaintiffs as passengers and loss of baggage, and the other for injuries to horses sustained while in course of shipment from Coffeyville, Kansas, to Harrell, Arkansas. There is no controversy in this court about the first.

They allege that, on or about the 15th day of September, 1907, plaintiffs loaded in a stock car of the defendant at Coffeyville, Kansas, twenty-five or twenty-six horses in good condition, and it agreed to deliver them in like condition at Harrell, Arkansas; but "on the 17th day of September, 1907, while at Little Rock, Arkansas, defendant permitted said car loaded with plaintiffs' horses to be continually run back and forth on the switch yard of defendant for a period of seven and one-half hours, bumping the car violently against other cars, knocking plaintiff's horses down, causing them to tramp upon each other, knocking them against each other and against the wall of the car, till they were badly bruised and damaged, thereby diminishing the value of said carload of horses to plaintiffs at least $300; that when said car was transferred to Chicago, Rock Island & Pacific Railway Company to be carried to Harrell it was then in a broken-down condition, insomuch that said car loaded with said horses was kept on the said track of the Chicago, Rock Island & Pacific Railway Company for a period of three hours; and that all of the negligence of the defendant aforesaid

contributed to the injury and damage of plaintiffs, and they prayed judgment for $331."

The defendant answered, and specifically denied each allegation of the complaint, and alleged that the contract of shipment into which plaintiffs and defendant entered was a special contract, by which the shipper assumed certain risks, and that the damages complained of were risks assumed by plaintiffs; and that plaintiffs had failed to comply with the contract and were not entitled to recover.

The contract of shipment referred to in the pleadings was a printed form with all the blanks filled, except the rate of freight to be paid, and contained the following statements and stipulations: "_____at the rate_____per_____subject to minimum weights and length of cars provided for in tariff, said rate being less than the rate charged for shipments transported at carrier's risk, for which reduced rate and other considerations it is mutually agreed between the parties hereto as follows:

*    *    *    ·*    *    *

"Fifth. That, as a condition precedent to the recovery of any damages for any loss or injury to live stock covered by this contract for any cause, including delays, the second party will give notice in writing of the claim therefor to some general officer or to the nearest station agent of the first party, or to the agent at destination or some general officer of the delivering line, before such stock is removed from the point of shipment or from the place of destination, and before such stock is mingled with other stock, such written notification to be served within one day after the delivery of the stock at destination, to the end that such claim may be fully and fairly investigated; and that a failure to fully comply with the provisions of this clause shall be a bar to the recovery of any and all such claims, and to any suit or action brought thereon.

*    *    *    *    *    *

"Twelfth. That in making this contract the undersigned owner, or other agent of the owner, of the stock named herein expressly acknowledges that he has had the option of making this shipment under the tariff rates, either at carrier's risk or upon a limited liability, and that he has selected the rate and

the liability named herein and expressly accepts and agrees to all the stipulations and conditions herein named."

Evidence was adduced in the trial of the issues tending to prove the following facts: The foregoing contract was made by plaintiffs and defendant on the 15th day of September, 1907, at Coffeyville, Kansas. Twenty-five or twenty-six horses were delivered at that time and place, in good condition, by plaintiffs to defendant for shipment to Harrell, Arkansas. Defendant had two rates of freight for shipment of live stock, one where the stock was shipped at the carrier's risk and the other where the liability was limited. The contract shows that the latter was agreed upon, and the defendant offered to prove what that was, and the court would not permit it to do so. The horses were shipped according to the contract, but were delivered in bad condition at Harrell. "They were tramped on and bruised and cut when delivered; one of them had a gash on her shoulder, and another was stamped up badly and scratched." All of this damage was done while in the yards at Little Rock "on account, as they state, of rough handling while being switched about the yards."

The horses arrived at Harrell on the 18th of September, 1907, at about two o'clock P. M. There was no station agent at Harrell. The defendant's nearest station was at Camden, about 35 miles from Harrell. Four or five days after the delivery of the horses at Harrell, plaintiffs, by their attorney, gave notice of claim for damages to agent of the defendant at Coffeyville, Kansas, by mail.

The court, over the objections of the defendant, instructed the jury, at the instance of the plaintiffs, in part, as follows:

"(1). It is the duty of common carriers to furnish sufficient facilities for the reasonably prompt transportation of goods or stock tendered for carriage, and they are liable for any negligent delay in furnishing such facilities, and if you believe from the evidence in this case that the St. Louis, Iron Mountain & Southern Railroad Company delivered the car of horses in controversy to the Chicago, Rock Island & Pacific Railway Company, a connecting carrier, in a broken or damaged car, and that on this account plaintiff's horses were held in transit for an unnecessary length of time, you will consider this in arriving at

the amount of damage plaintiffs are entitled to, provided that you find that they are entitled to any damage."

"6. The jury are instructed that if they find from the evidence that the plaintiff gave notice to the defendant of the damage to the stock within six days after the arrival of the stock at the destination, then the same was a reasonable and sufficient compliance with the terms of said contract."

And the court instructed the jury, at the request of the defendant, in part, as follows:

"(4). If the jury believe from the evidence that the defendant received the stock mentioned in the complaint, and which was destined to pass over defendant's road and a connecting line, and contracted only to carry it over its own line and then to deliver it to the connecting line, then they will find for the defendant, unless they find that the damage to the stock mentioned occurred while said stock was in this defendant's possession.

"(5). The court instructs the jury that in this case there is a written contract expressing the terms and conditions upon which the stock in question were to be shipped from Coffeyville to Harrell, and that all parties are bound by the terms of that contract, and the jury will not consider any evidence that varies from the terms of the same."

And refused to instruct the jury as follows:

"(8). If the jury find that, by the terms of the bill of lading or shipper's contract, notice in writing should have been given to the defendant or delivery line of any loss or damage to the stock within twenty-four hours after the delivery of the stock, and that no such notice was given, they will find for defendant.

"(9). If the jury believe from the terms of the bill of lading or shipper's contract it was agreed that the defendant should not be responsible for loss or damage to stock shipped unless written notice of said loss of damage was given to the defendant before the stock were removed from the point of shipment or destination before the stock was mingled with other stock and within one day after the delivery of the stock at place of destination, and that no such notice was given to defendant on delivery, you will find for the defendant."

The jury returned a verdict in favor of plaintiff for $290, and the defendant appealed.

The contract of shipment shows that the owner of the stock had the option of shipping, under the tariff rates of the defendant, either at carrier's risk or upon a limited liability, and that they selected the latter. The contract expressly provides: "said rate," the rate agreed upon, "being less than the rate charged for shipments transported at carrier's risk, for which reduced rate and other considerations, it is mutually agreed between the parties hereto as follows:" Appellant should have been permitted to show what this rate was. Such evidence would not have varied the contract. *Busch* v. *Hart,* 62 Ark. 330; *St. Louis, I. M. & S. Ry. Co.* v. *Wynne Hoop & Cooperage Co.,* 81 Ark. 373; *Soudan Planting Co.* v. *Stevenson,* 83 Ark. 163.

Instruction numbered 1 and given at the request of the plaintiffs should not have been given. There was no evidence upon which to base it. There was no evidence that the stock was damaged on account of delay in shipment. Plaintiffs testified that the stock was damaged while in the yards of the defendant at Little Rock on acount of rough handling while being switched about the yard, and on account of being thrown against each other and knocked down, and that their damage on this account was $290. But it does not appear that the instruction was prejudicial, as the verdict of the jury was for $290.

The fifth paragraph of contract of shipment in reference to notice of claim for damages is the basis of the principal controversies in this case. Similar stipulations have been sustained by this court. *Kansas & Arkansas Valley Railroad Co.* v. *Ayers,* 63 Ark. 331; *St. Louis & San Francisco Railway Co.* v. *Hurst,* 67 Ark. 407; *St. Louis & San Francisco Railroad Co.* v. *Pearce,* 82 Ark. 353.

The act of Congress, known as the Hepburn Act, approved June 29, 1906, does not affect the validity of such stipulations, when reasonable and based upon a valuable consideration. That act provides: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property

caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed."

The stipulation in question does not exempt the defendant from liability imposed by that act, which extended the liability of the initial carrier for loss, damage, or injury to property while in course of transportation over the line of a connecting carrier. Before it was enacted an initial carrier could not exempt itself from such liability for loss, damage, or injury incurred on its own line, yet it was lawful for it to enter into stipulations like the one in question when the shipment of the property was confined to its own line. For the same reason it can enter into such stipulations under the Hepburn Act as to loss, damage, or injury suffered on the line of the connecting carrier.

Such stipulations, however, must be reasonable and based on a consideration. *St. Louis & San Francisco Railroad Co.* v. *Pearce*, 82 Ark. 353, 358. The stipulation in this case was based upon a sufficient consideration, a reduced rate of freight. The reasonableness depends upon the sufficiency of the time allowed for giving the notice. In *St. Louis & San Francisco Railroad Co.* v. *Hurst*, 67 Ark. 407, 410, it was held that such a contract is reasonable "if it allowed the shipper sufficient time, with the use of reasonable diligence, to discover the damage and give the notice; otherwise it was unreasonable."

In the stipulation in the case before us the notice in writing was required to be served within one day after the delivery of the stock at destination. The object of the notice was to give the carrier an opportunity to fully and fairly investigate the claim for damages before the horses should be placed beyond the power of the carrier to examine and inspect by reasonable exertion. It is obvious that this could have been done only by actual notice. The contract says that the notice must be served within the one day, and this means actual notice. Notice by mail, then, would not be sufficient unless it was received within the one day.

Was the stipulation as to notice reasonable? It might have

been given under the contract to any one of the following parties, to-wit, some general officer, or to the nearest station agent, of the defendant, or to the agent at destination, or some general officer, of the delivering carrier. There was no agent at Harrell, the destination. Camden was the nearest station of the defendant, where there was a station agent, and it was 35 miles from Harrell. The stock arrived at Harrell on the 18th of September, 1907, at about two o'clock P. M. Under these circumstances was one day a sufficient time in which to give the notice? It does not clearly appear to us that it was or was not; and we think that this is a question which should have been submitted to the jury under proper instructions of the court.

Instruction numbered 6 and given at the request of plaintiffs should not have been given. The question is not whether six days were a reasonable time in which to give notice, but whether one day after the arrival of the stock at its destination was sufficient time. If it was not, the entire stipulation requiring it was invalid and not enforceable. *St. Louis, Iron Mountain & Southern Railway Co.* v. *Coolidge*, 73 Ark. 112, 117; *St. Louis & San Francisco Railroad Co.* v.ʳ *Pearce*, 82 Ark. 353, 358.

We have not failed to notice section 2 of the act entitled "An act to prohibit common carriers from abridging and limiting their statutory and common-law liabilities by contracts, rules and regulations," approved April 30, 1907, cited by appellees. It is unnecessary to consider it in this case.

Instruction number 4, given at the defendant's request, and limiting its liability to damage to stock which occurred while the stock was in its possession, is contrary to the act of Congress, known as the Hepburn Act, and should not have been given.

Reverse and remand for a new trial.