ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* KELLER.

Opinion delivered April 26, 1909.

CARRIERS—STIPULATION AS TO NOTICE OF DAMAGES.—A stipulation in a bill of lading that the carrier shall not be responsible for loss or damage to freight shipped "unless notice of such loss or damage is given to the delivering carrier within 30 hours after delivery" is reasonable and valid, and not in conflict with the Hepburn act extending the liability of the initial carrier for loss, damage or injury to property while in course of transportation over the line of a connecting carrier.

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; reversed.

*W. F. Evans* and *B. R. Davidson,* for appellant.

1.   The State court had no jurisdiction.   The interstate commerce law, as amended by the Hepburn act, takes absolute control of all interstate transportation.   See Hepburn act, § § 1, 2, 3, 5, 6, 7, 8, 9, 10, 13, 14-16, 20.   Where a new right has been created, and the remedy is prescribed in a particular court, that court has exclusive jurisdiction.   168 Mo. 652-6; 33 Cal. 212; 36 Cal. 281; 45 Cal. 90; 6 Blackf. 125; 13 L. R. A. (N. S.) 966; 6 Neb. 423; 65 Tex. 301; 65 Miss. 454; 105 Fed. 785; 74 *Id.* 981; 81 *Id.* 78; 112 *Id.* 826; 142 *Id.* 187; 152 Fed. 293; 157 Fed. 847; 165 *Id.* 1; 95 Iowa 113; 41 Neb. 375.

2.   The Hepburn act is unconstitutional in that it deprives defendant of its property without due process of law.   Due process of law under the 5th Amendment applies to the National Government; protects property from the arbitrary exercise of the powers of government unrestrained by established principles of private right.   106 U. S. 196; 4 Wheat. 235; *Id.* 519; 18 How. 276; 94 U. S. 113; 96 *Id.* 101; 124 *Id.* 219; 164 *Id.* 403; 169 *Id.* 266; 166 *Id.* 226 *et seq.*   It means a trial by a court governed by rules previously established.   17 Wall. 438; 92 U. S. 481; *Id.* 543; 95 U. S. 294; 103 *Id.* 182; 154 *Id.* 46; 163 *Id.* 85; 134 *Id.* 418.   The party must not only be brought into court, but he must be allowed to set up any good defense according to the usage of the common law.   Cooley, Const. Lim., 7th Ed. 527, and note 1; 18 How. 253; 110 U. S. 535; 111 *Id.* 708; 166 U. S. 235.   Taking away a valid defense is confiscation.   62 N. E. 488.   See also 164 U. S. 578; 208 U. S. 161; 74 Fed. 803.   Congress can no more take property without due process than a State.   18 Gratt. 100; 164 Fed. 215.

(1)   It deprives both the shipper and the carrier of the right to make a reasonable and lawful contract.   198 U. S. 45.   A bill of lading is a contract to carry to destination.   174 U. S. 580. The right to make a reasonable and lawful contract is inalienable and cannot be destroyed by legislation.   20 Wall. 666; 2 Peters 657; 8 Wall. 623; 111 U. S. 746; 90 N. W. 1099; 155 Ill. 98; 98 N. Y. 107; 99 N. Y. 377; 109 *Id.* 389; 46 Atl. 234; 45

S. E. 331; 175 U. S. 211; 165 *Id.* 578; 196 *Id.* 447; 207 *Id.* 463; 10 S. E. 285; *Id.* 288; 59 Pac. 341; 198 U. S. 45; 193 U. S. 340 *et seq.*

(2)  It compels the carrier to contract for services beyond its line.  200 U. S. 536; 110 U. S. 668; 61 S. W. 1096; 160 Mass. 62; 142 Fed. 844; 63 Ark. 326; 35 Ark. 402.

(3)  In making the initial carrier liable to the holder of the bill of lading for any damage or injury to the property occurring on the line of any other carrier to which the property may be delivered, or over which it may pass, the act arbitrarily deprives one person of property and confers it upon another.  Neither Congress nor the Legislature of a State has the power to make one person the debtor of another over whom he has no control, nor liable for his obligations.  15 S. W. 87; 44 Conn. 291; 47 N. E. 302; 18 N. E. 692; 53 Ia. 42; 78 Ill. 55; 165 U. S. 150; 49 Ark. 492; 72 Ark. 357; 103 Mass. 120; 33 Ark. 816; 68 Ark. 471; 127 Mass. 50; 71 Fed. 610; 164 U. S. 403; *Id.* 578.

(4)  The remedy afforded by the act is inadequate and unlawful.  The party ultimately liable cannot ordinarily be made a party to the record in the suit, and an attempt to make a receipt or judgment a claim against the party who is not a party to the record is contrary to natural right, and to the 5th Amendment.  94 Am. St. Rep. 722; 118 Fed. 180; 67 S. W. 856.  A connecting carrier must be made a party to the record before its interests can be affected.  68 Ark. 171; 152 Fed. 290; 118 Fed. 180; 173 U. S. 684 *et seq.;* 198 U. S. 45.  Personal rights and private property cannot arbitrarily be taken away under the guise of police regulation.  92 U. S. 259; 134 U. S. 418; 142 U. S. 552; 143 U. S. 344; 103 Fed. 620.

3.  The notice required by the contract of any loss or damage to be given within 30 hours after delivery was a condition precedent to the right to sue.  None was given. 67 Ark. 407; 16 U. C. P. 76; 76 Mo. 514; 20 Mo. App. 445; 18 *Id.* 577; 23 Am. & Eng. R. Cas. 684; 16 *Id.* 259, and cases cited; 4 Elliott on Railroads, 2340, § 1412.  If this is a shipment under the Hepburn act, the notice is required, and the offer of two rates to the shipper was not necessary.  194 U. S. 427; 204 U. S. 505.

*Sam R. Chew,* for appellee.

FRAUENTHAL, J.   This is a suit instituted by the plaintiff, W. F. Keller, against the defendant, St. Louis & San Francisco Railroad Company, for a recovery of damages to a shipment of peaches. It is alleged in the complaint that on July 20, 1907, the plaintiff delivered to the defendant at Van Buren, in the State of Arkansas, 515 crates of peaches, and that the defendant by its written contract of shipment agreed to carry same to New York in the State of New York and there deliver same to D. T. Goldsmith. It is alleged that the peaches were greatly damaged on account of the unnecessary and unreasonable delay in their transportation, and by the neglect and failure to properly and sufficiently ice and keep iced the refrigerator car in which the peaches were carried, so as to preserve and keep them sound and firm.

In its answer the defendant interposed a number of defenses to a recovery in this case. It pleaded that from the complaint it does not appear that any damage was done to the shipment on defendant's line of railroad, and that the plaintiff seeks to recover from defendant damages to the peaches which occurred on the line of railroad of another and connecting carrier, under the provisions of the act of Congress commonly known as the "Hepburn Act," and which was approved June 29, 1906, and which is amendatory of the Interstate Commerce Act approved February 4, 1887; that that act, in so far as it attempts to hold liable the initial carrier for the negligence of a connecting carrier, is unconstitutional and invalid; and, if valid, that the State courts have no jurisdiction to enforce the rights thereby created.

The defendant further denied every allegation of negligence and damage, and specifically pleaded that, according to the written contract of shipment, it was provided that a notice in writing of the claim for loss or damage must be given within thirty hours after the arrival of the property at destination and delivery, and that if such notice was not given a recovery could not be had; and it alleged that such notice was not given.

By the contract under which these peaches were shipped it was provided: "No carrier shall be responsible for loss or damage of any of the freight shipped unless it is proved to have occurred during the time of its transit over the particular carrier's line, and of this notice must be given within thirty hours after

the arrival of the same at destination. No carrier shall be responsible for loss or damage to property unless notice of such loss or damage is given to the delivering carrier within 30 hours after delivery."

Relying upon the validity of the above stipulations, the defendant asked the giving of the following instructions:

"7. I charge you that by the terms of the contract if the shipper claimed that there was damage or loss sustained it was his duty to give notice of the same within thirty hours after the arrival of the same at destination. If he failed to do so, then he could not recover in this action.

"8. . I charge you that no recovery could be had in this case unless notice of said loss or damage was given to the delivering carrier within thirty hours after delivery."

The court refused to give these instructions.

The evidence tended to prove that the peaches were delivered to the defendant for transportation on July 20, 1907, consigned to "D. T. Goldsmith, Pier 29, New York, care of Vandalia," and that they arrived on the docks in New York, Pier 29, at 12 o'clock on July 28, 1907, and on the same day were delivered to D. T. Goldsmith, who began an examination of the same on the night of that day by opening the crates and baskets and inspecting the peaches; and he testified that he then found them in a very unsound and decayed condition. On the morning of July 29, 1907, D. T. Goldsmith, the party named as consignee in the bill of lading, executed a written receipt for the peaches in which he stated: "Received in good condition the following described packages;" and then follows a description of this shipment of peaches.

Thereafter, and on the 29th day of July, 1907, the peaches were sold by plaintiff's agent at a very greatly reduced price on account, as it is claimed, of their damaged condition. It does not appear that any notice of any kind was given at any time of the intention to claim damages or of any claim of damages.

Inasmuch as the right of plaintiff to recover herein is determined by the fact as to whether or not there was given notice of the claim of damages as required by the stipulations of the contract of shipment, we do not think it necessary to enter into

a discussion and determination of the other defenses interposed by defendant.

The contract of shipment in this case specifically provided that, before a recovery could be had, a notice in writing must be given of loss or damage within thirty hours after the arrival of the peaches at destination and their delivery; that is to say, a notice of the intention to claim damages must be so given. And in this case such notice was not given.

This provision of the contract does not affect the liability, itself, of the common carrier created or caused by the act itself of injury or of negligence. It is not a limitation of or an exemption from liability done or caused by such act of injury or negligence. Therefore this provision does not itself limit the common-law liability of the carrier, nor does it exempt the carrier from the performance of any common-law duty or from the common-law liability imposed upon it by any failure or negligence in the performance of those duties. It is a regulation which the parties have agreed shall be a condition to a recovery. It is founded upon the consideration of the original contract, and its validity depends upon its reasonableness. If it is not inhibited by any statutory enactment, and if it is otherwise reasonable, there is no reason of public policy that should declare it invalid.

Mr. Hutchinson, in his work on Carriers (3d Ed.), § 442, says: "It is frequently the custom for the carrier to insert in the contract of shipment a condition that, in the event of loss, the owner shall give notice of his claim within a specified time. Such conditions are usually to the effect that the notice shall be in writing and presented to some officer or agent of the carrier, either before the goods are removed from the point of destination, or within a certain time thereafter, or within a designated time after loss has occurred; and, when such conditions are reasonable, the owner will be precluded from the right to maintain an action against the carrier unless he has presented the notice within the time stated and in the manner provided. The object of conditions of this character, it is said, is to enable the carrier, while the occurrence is recent, to better inform himself of what the actual facts occasioning the loss or injury were, and thus protect himself against claims which might be made upon him after such a lapse of time as to frequently make it difficult, if

not impossible for him to ascertain the truth. It is just, there-
fore, that the owner, when the loss or injury has occurred, should
be required, as a condition precedent to enforcing the carrier's
liability, to give notice of his claim according to the reasonable
conditions of the contract." And thus it will be seen that this
provision is a condition of recovery, and not an exemption from
liability. Its effect is to require the one who has the peculiar
knowledge to inform the other who has not that knowledge to
seek the facts while they exist, so that the facts may be ob-
tained and presented by both sides; its effect is, therefore, to
uphold and enforce rights if they are founded on truth, and not
to limit or defeat those rights. 6 Cyc. 505; *Kalina* v. *Union
Pac. Railroad Co.,* 69 Kan. 172; *The Westminster,* 127 Fed. 680.

This court has uniformly upheld and enforced similar pro-
visions in contracts of common carriers where the same, under
the circumstances of the case, were reasonable and the damages
occurred during the actual transportation of the goods. *Kansas
& Ark. Valley Rd. Co.* v. *Ayers,* 63 Ark. 335; *St. Louis & San
Francisco Ry. Co.* v. *Hurst,* 67 Ark. 407; *St. Louis, I. M. & S.
Ry. Co.* v. *Jacobs,* 70 Ark. 401; *St. Louis Southwestern Ry. Co.*
v. *McNeil,* 79 Ark. 470; *St. Louis & San Francisco Rd. Co.* v.
*Pearce,* 82 Ark. 353; *St. Louis, I. M. & S. Ry. Co.* v. *Furlow,*
89 Ark. 404.

This court has also uniformly upheld and enforced similar
provisions in the contracts of telegraph companies, requiring the
giving of notice of claim of damages within the stipulated time
as a condition precedent to a recovery. And it is said in the
case of *Western Union Telegraph Co.* v. *Dougherty,* 54 Ark.
221, that the authorities are almost uniform in maintaining the
reasonableness and validity of such stipulations. *Western Union
Tel. Co.* v. *Moxley,* 80 Ark. 554.

Under the circumstances of this case we think this provi-
sion for notice was reasonable. The shipper delivered for carriage
perishable goods which were packed in baskets and crates, so
that any damage to them was not discoverable until they were un-
packed. The carrier had an innumerable amount of shipments,
so that it would have been impracticable, if not impossible, for the
carrier to examine each shipment to discover whether injury or
damage had been sustained by it. And neither the contract, nor

usage, nor reason demands of the carrier such inspection, even if he had the right to break packages for such examination. In this case, after the arrival and delivery of the goods at New York, the party named as consignee, and who received the peaches, gave to the carrier a written receipt in which he stated that the peaches were then in good condition. This was *prima facie* evidence of this fact of that condition of the peaches. 6 Cyc. 505. And, while that could be controverted or explained by testimony, it nevertheless shows the reasonableness of the provision requiring the giving of the notice of claim of damage within the time specified. For here, in the first place, the carrier had no opportunity to examine the condition of the peaches, and then the shipper gives him a written statement, saying that they are in good condition, and thus lulls the carrier into inaction, if he had the opportunity of inspection. But within a few hours after the delivery the consignee unpacked the peaches and discovered their alleged damaged condition, and within the thirty hours after such delivery actually sold and entirely removed the peaches. A notice could readily and conveniently have been given, to the party designated to receive the same within the time specified in this provision of the contract, of this claim of damage, and an opportunity would thus have been afforded to the carrier to also have examined the peaches and found out the amount of the damages. The shipper had agreed to this provision, and the written evidence of the agreement was continuously in his possession to the time of the delivery of the peaches to him at the point of destination.

Under all the circumstances of this case this stipulation of the contract was reasonable; and under the repeated decisions of this court it was valid and binding. And in this case, therefore, it must be upheld, if it is not invalidated by the provisions of the act of Congress, known as the "Hepburn act," above referred to, making the initial carrier liable for damages to property received by it for transportation caused by any connecting carrier and providing that "no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed."

In the case of *St. Louis, Iron Mountain & Southern Ry. Co. v. Furlow,* decided by this court on March 1, 1909, and reported in 89 Ark. 404, we held that a stipulation in a con-

tract of shipment requiring a notice of damage to be given, similar to the one involved in this suit, was not invalidated by any provision of the Hepburn act. In that case we said: "The stipulation in question does not exempt the defendant from liability imposed by that act which extended the liability of the initial carrier for loss, damage or injury to property while in course of transportation over the line of a connecting carrier. Before it was enacted an initial carrier could not exempt itself from such liability for loss, damage or injury incurred on its own line, yet it was lawful for it to enter into stipulations like the one in question when the shipment of property was confined to its own line. For the same reason it can enter into such stipulations under the Hepburn act as to loss, damage or injury suffered on the line of a connecting carrier."

It therefore follows that the stipulation in the contract of shipment in this case requiring a notice to be given of the claim of damage within the time therein specified is reasonable and valid; and upon the failure to give that notice the plaintiff was not entitled to recover.

The court, therefore, erred in refusing to give the said instructions, numbers 7 and 8, asked for by the defendant. The evidence tended to show that the above notice was not given, and it seems in the testimony to be conceded that such notice was not given.

It would not, therefore, serve the ends of justice to remand this cause for a new trial.

The judgment of the lower court is therefore reversed, and the cause dismissed.