# Louisville & N. R. R. Co. *v.* Brewer.

### *Damage for Failure to Deliver Freight.*

(Decided April 17, 1913. Rehearing denied June 5, 1913.
62 South. 698.)

1. *Carriers; Freight; Connecting Carrier; Initial Carrier.*—An initial carrier is not liable as a carrier of an interstate shipment over the lines of a connecting carrier, where the goods were held at their point of destination by the connecting carrier after a reasonable time for their removal subsequent to the mailing of notice of their arrival as required by section 6137, Code 1907.

2. *Same.*—The provisions of U. S. Comp. St. 1911, p. 1307, do not make the initial carrier liable for any loss caused by a connecting carrier, where the connecting carrier's liability as a carrier had ceased.

3. *Same; Loss or Injury; Nature of Liability.*—Under the common law a carrier was liable as an insurer from the time he received the goods until he delivered them to the consignee, or his liability as carrier terminated under the law, except for losses occasioned by the owner or the acts of God or the public enemy.

4. *Same; As Warehouseman; Duty.*—Where a common carrier has no warehouse at the point of destination, after its duties as a carrier are at an end it may relieve itself from further liability by delivering the goods to a responsible warehouseman for or on account of the owner or consignee.

5. *Same.*—After a carrier's liability as a carrier has been terminated, the carrier is liable only as a warehouseman.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Action by W. C. Brewer against the Louisville & Nashville Railroad Company, for damages for failure to deliver freight. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Plea 2 is: "That defendant's line of railway runs from Nashville, Tenn., to Montgomery, Ala., and that it has no line of railway running from Montgomery, Ala., to Tuskegee, Ala., but that a line of railway known as the Western Railway of Alabama, at said time mentioned in complaint, ran from Montgomery to Tuskegee, Ala., and defendant delivered said goods to said Western Railway in Montgomery within a reasonable time after same were received by it at Nashville; that said goods at the time of said delivery by it were in the same condition as when they were received by defendant at Nashville; that said Western Railway, within a reasonable time after delivery to it, safely carried said goods to Tuskegee, and deposited or stored same in a depot or warehouse maintained and operated by it at Tuskegee for the purpose of storing freight and goods; that at the time of the arrival of said goods at Tuskegee, and continuously since said Tuskegee was a city or town having daily mail, and that within 24 hours after the arrival of said goods at Tuskegee, notice of the said arrival of said goods was given to plaintiff by mail, which notice was properly addressed to him at Tuskegee and the postage thereon prepaid; that said goods remained in the possession of said Western Railway at its said depot in Tuskegee unclaimed for more than 60 days after their arrival and after notice; and that said goods were thereafter sold by said Western Railway at public outcry, at its freighthouse in Montgomery, Ala., to the highest bidder for cash, after notice, indicating

the nature of the package in which said goods were contained, the consignee, and the time and place of said sale, had been given for three weeks by publication once a week in the Montgomery Advertiser, a newspaper published at said place of sale, and that said goods were, upon the sale thereof to the highest bidder, delivered to said highest bidder as the purchaser thereof at said sale, and that neither the owner nor consignee of said goods resided at Tuskegee, Ala., at said time."

TILLMAN, BRADLEY & MORROW, and M. M. BALDWIN, for appellant. The court erred in sustaining demurrers to plea 2.—Sec. 6137, Code 1907; *Kennedy Bros. v. M. & G. R. R. Co.*, 74 Ala. 430; *Bowdoin v. A. C. L. Ry.*, 148 Ala. 29; *So. Ry. v. Aldridge, et al.*, 142 Ala. 368; *L. & N. v. Touart*, 97 Ala. 514; sec. 6139, Code 1907. The appellant was not liable under the facts in this case under what is known as the Carmack amendment found in the 1911 supplement U. S. Comp. St. p. 1307. —*C. of Ga. v. Sims*, 169 Ala. 300; 63 S. E. 415; 137 S. W. 721; 119 S. W. 354; 117 S. W. 517; 137 S. W. 721. If either defense set up by the plea is good, the plea is good.—*W. U. v. Sanders*, 164 Ala. 241. It cannot be contended that the sustaining of the demurrers to the plea was harmless.—*N. C. & St. L. v. Parker*, 123 Ala. 683. The liability sought is a common law liability, and delivery must be made to the consignee or his authorized agent, and a delivery to any other person would make the railroad liable.—*S. & N. v. Wood*, 66 Ala. 167; *Collins v. A. G. S.*, 104 Ala. 390. Notice was essential to terminate the liability of the carrier, and it was further necessary to plead and show notice, and a reasonable time after notice, and the fact that appellee did not call for the goods within such time.—*C. of Ga. v. Burton*, 165 Ala. 425; *So. Ry. v. Adams Mach. Co.*, 165 Ala.

436.   The same argument applies to plea 3.   Under the
issues as framed, it was the duty of appellee to demand
the goods at the point of destination.—*L. & N. v. Meyer,*
87 Ala. 597; *L. & N. v. McGuire,* 79 Ala. 399.   The an-
swer to the fourth interrogatory propounded to appel-
lee by appellant should not have been excluded.—*B. R.
L. & P. Co. v. Oden,* 164 Ala.; *B. R. L. & P. Co. v. Mor-
ris,* 163 Ala. 190; *Sullivan T. Co. v. L. & N.,* 163 Ala.
125; *Goodwater W. Co. v. Street,* 137 Ala. 621.   Coun-
sel discuss the question of damages with citation of au-
thority, but in view of the opinion it is not deemed nec-
essary to here set it out.

DENSON & DENSON, and WEIL, STAKELY & VARDAMAN,
for appellee.   Plea 2 sets up no defense that was not
available under the general issue, and hence, any error
in sustaining demurrers to it was without injury.—
*Hamrick v. Andrews,* 9 Port. 9; *Fail v. McArthur,* 31
Ala. 26; *Kennedy v. Lambert,* 37 Ala. 57; *Phoenix I.
Co. v. Moog,* 78 Ala. 284; *L. & N. v. Allgood,* 113 Ala.
163; *Beall v. Folmar,* 122 Ala. 414; *L. & N. v. McCool,*
167 Ala. 644.   The defense that a carrier's liability as
a common carrier had ceased, and that it holds the
goods as warehouseman is available under the gen-
eral issue.—*Collins v. A. G. S.,* 104 Ala. 390; *Frederick
v. L. & N.,* 133 Ala. 486; *Kennedy v. M. & G. R. R. Co.,*
74 Ala. 430.   As to when the liability of common car-
rier terminates, and that of warehouseman begins coun-
sel cite.—*Bowdoin v. A. C. L. R. R. Co.,* 148 Ala. 29.
In any event, the plea was insufficient as a defense to
defendant in the capacity as a warehouseman because
it failed to aver sufficient notice under section 6139,
Code 1907.—Authorities supra.

DE GRAFFENRIED, J.—This suit was brought by
the plaintiff, W. C. Brewer, against the defendant, the

Louisville & Nashville Railroad Company, to recover damages for the failure by the defendant to deliver to the plaintiff certain personal property which the plaintiff delivered to the defendant at Nashville, Tenn., and which the defendant undertook for a reward, as a common carrier, to transport and deliver to the plaintiff at Tuskegee, Ala. The complaint contains but one count, and that count is in code form.

We direct attention to the fact that the suit is for a failure to deliver, and not for delay in delivering, the goods, that the suit is against the defendant as a *common carrier*, and that the complaint counts upon the failure of the defendant to perform a *carrier duty*, and is for the enforcement of a *carrier* liability. Under the pleadings in this case the defendant's contract of carriage bound it to the same strict performance of its duties to the plaintiff as the common law places upon a common carrier of freight. It is not claimed that the goods were destroyed through the fault of the plaintiff, by an act of God or of the public enemy, and the defendant was, so long as the relation of common carrier existed between it and the plaintiff, an insurer of the freight.

The defendant's line of railway does not extend from Nashville, Tenn., to Tuskegee, Ala., but only from Nashville, Tenn., to Montgomery, Ala. When the freight reached Montgomery it was then delivered by the defendant to the Western Railway of Alabama, to be by it transported from Montgomery to Tuskegee, and there, by the Western Railway, to be delivered to the plaintiff.

Plea 2, which the reporter will set out, sets up a state of facts which, if true, relieved the defendant of its duties to the plaintiff, as a common carrier, and before the sale of the books for storage and freight charges

placed the books in the hands of the Western Railway of Alabama as a warehouseman.—*Norfolk & Western Ry. Co. v. Stuart's Draft Milling Co.,* 109 Va. 184, 63 S. E. 415; *Ala. & Tenn. Rivers Co. v. Kidd,* 35 Ala. 209: *Kennedy Bros. v. M. & G. R. R. Co.,* 74 Ala. 430; Code of 1907, § 6137.

We find nothing in the Carmack amendment to the act of Congress known as the "Hepburn Bill" (Act June 29, 1906, c. 3591, 34 Stat. 593, § 7, pars. 11, 12 [U. S. Comp. St. Supp. 1911, p. 1307]) which in any way conflicts with the above views.—*Norfolk & W. Ry. Co. v. Stuart's Draft Milling Co., supra; Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed.——.

In the above-cited case of *Ala. & Tenn. Rivers Railroad Co. v. Kidd,* this court, announcing a well defined and recognized common-law doctrine, said: "If goods, transported by railroad, are not called for by the consignee when they arrive at their destination, and are then deposited in the warehouse of the company without additional charge, until the owner has a reasonable time, by the exercise of proper diligence, to remove them, the liability of the carrier, as a carrier, is at an end; and if after this the goods remain in their warehouse, they are responsible only as keepers for hire. * * * If they in fact keep no such warehouse at the point to which goods consigned to the owner or a third person are sent, it seems that the duty of the company is performed and their responsibility at an end, if, after carrying the goods to the place of destination, and keeping them safely for such a length of time as to afford the owner an opportunity, by the use of due diligence, to remove them, they deposit them in the warehouse of a responsible person, for and on account of the owner or consignee."

Of course if a common carrier of freight has no warehouse at the point of destination of freight, and it safely keeps such freight until its *carrier duties are at an end,* and the consignee fails to call for and get such freight, and it then deposits the freight in the warehouse of "a responsible person for and on account of the owner or consignee," its duties to the consignee with reference to the freight are at an end, and if after that time the consignee brings a suit against such carrier for a failure to deliver such freight, the carrier may show that it has performed its duties to the consignee by showing that it has delivered the freight to a responsible warehouseman for account of such consignee.— *Norfolk & Western Ry. Co. v. Stuart's Draft Milling Company, supra.*

In the case of *Atlantic Coast Line v. Riverside Mills,* 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7, the Supreme Court of the United States was called upon to pass upon the constitutionality of, and to construe, the Carmack amendment to the Hepburn bill, and in the opinion in that case the court says: "The indisputable effect of the Carmack amendment is to hold the initial carrier engaged in interstate commerce, and 'receiving property for transportation from a point in one state to a point in another state,' as having contracted for *through carriage* to the point of destination, using the lines of connecting carriers as its agents." In this case the court further says: "The English cases beginning with *Muschamp v. Lancaster Railway Company,* 8 M. & M. 421, decided in 1841, down to *Bristol, etc., Railway v. Collins,* 7 H. L. Cases, 194, have consistently held that the mere receipt of property for transportation to a point beyond the line of the receiving carrier, without any qualifying agreement, justified an inference of an agreement for through trans-

portation, and an assumption of full *carrier* liability by the primary carrier. The ruling is grounded upon considerations of public policy and public convenience, and classes the receipt of the goods so designated for a point beyond the carrier line as a holding out to the public that the carrier has made its own arrangements for the continuance by a connecting carrier of the transportation after the goods leave its own line."

At common law a common carrier was an insurer of freight, except against damage or loss occasioned by the plaintiff or owner of the freight, by an act of God or the public enemy, from the time he received the freight as such common carrier until he delivered it to the consignee at the point of destination, or until, under the law, his carrier liability terminated. From that time on until delivery, if he retained possession of the freight, he was liable only as a warehouseman. If he had no warehouse at the point of destination, then when the time arrived for his carrier liability to terminate, he absolved himself from all liability on account of such freight, provided he deposited the freight in the warehouse of a responsible person for and on account of the consignee. The principal trouble was that the initial carrier frequently undertook the carriage of freight, through the medium of other independent carriers, : beyond the terminus of its own line, and many of the American courts committed themselves to the doctrine —and upon common-law principles upheld contracts providing—that "each carrier shall be liable only for loss or damage occurring on its own line. * * * As a result the shipper could look only to the initial carrier for recompense for loss, damage, or delay on its part of the route. If such primary carrier was able to show a delivery to the rails of the next succeeding carrier, although the packages might and usually did con-

tinue the journey in the same car in which they had been originally loaded, the shipper must fail in his suit. He might, it is true, then bring his action against the carrier so shown to have next received the shipment. But here, in turn, he might be met by proof of safe delivery to a third separate carrier. In short, as the shipper was not himself in possession of the information when and where his property had been lost or damaged, and had no access to the records of the connecting carrier, who in turn had participated in some part of the transpor-. tation, he was compelled, in many instances to make such settlement as should be proposed."—*Atlantic Coast Line v. Riverside Mills, supra.*

In the case of *Adams Express Company v. Croninger, supra,* the Supreme Court of the United States, referring to the Carmack amendment, said: The liability thus imposed is limited to "any loss, injury, or damage caused by it or a succeeding carrier to whom the property may be delivered," and plainly implies a liability for some default in its common-law duty as a common, carrier.

We have quoted extensively from the two cases last cited for the purpose of illustrating our views that in said cases the Supreme Court of the United States has declared that under the Carmack amendment all interstate shipments are covered and controlled by the above-quoted English rule regardless of the stipulations contained in bills of lading evidencing the shipments, and that the true effect of said amendment is to bring all interstate shipments, the stipulations of bills of lading to the contrary notwithstanding, under the operation of that rule.

Whether section 6137 of the Code of 1907 has or has not applicability to *interstate* shipments it is not necessary for us to determine. On that subject, however,

we refer to the following cases:—*Adams Express Co. v. Croninger, supra; St. L. & S. F. R. R. v. Keller,* 90 Ark. 308, 119 S. W. 254; *St. L., I. M. & S. v. Furlow,* 89 Ark. 404, 117 S. W. 517; *Patton v. T. & P. Ry. Co.* (Tex. Civ. App.) 137 S. W. 721.

As it seems to be the policy of the "courts of the United States, in dealing with interstate commerce transactions having their seat within a state, to apply the general principles of the common law of that state (as they understand it), so far as the point presented has not been settled by statute" (Baldwin's American Railway Law, p. 384, subd. 9; *Western Union Tel. Co. v. Call Pub. Co.,* 181 U. S. 92, 21 Sup. Ct. 561, 45 L. Ed. 765), it seems to us that, under the very language of the above-cited opinions of the Supreme Court of the United States, plea 2 brings this case clearly out of the operation of the Carmack amendment, and constituted a complete answer to the plaintiff's complaint (*Kidd's Case,* 35 Ala. 209). The plea alleges that notice of the arrival of the freight at Tuskegee was, within 24 hours after its arrival at that point, mailed to the consignee at Tuskegee, properly stamped and addressed to him at that point, and that the freight remained in the depot of the Western Railway at that *point unclaimed for more than 60 days* after its arrival at that point. The plea shows that the defendant had no warehouse at Tuskegee, and shows, therefore, under all of our decisions, a proper and legal ending of defendant's carrier liability to the plaintiff. This suit was for a breach by the defendant of a *carrier* duty, and when that carrier duty came to an end, the Western Railway Company became the warehouseman of the plaintiff, and the defendant's liability under its contract with plaintiff was as fully performed as if defendant had, through an agent, gone to Tuskegee, taken the goods from the Western Railway

Company's depot, and placed them, for and on account of the plaintiff, in some other responsible warehouse. If *that* had been done, we do not think that it would be seriously contended that defendant could be held liable in this action.—*Norfolk & Western Ry. Co. v. Stuart's Draft Milling Co., supra; Kidd's Case, supra.*

In the above discussion we have treated as facts the allegations of fact contained in plea 2. The demurrer, of course, admits the facts set up as true. It seems, therefore, that the court committed an error in sustaining the plaintiff's demurrer to plea 2; and, as that plea was not duplicated by any other plea upon which the case was tried, this case must be reversed because of this erroneous ruling of the court.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.