EOFF v. SCULLIN et al., RECEIVERS.

Opinion delivered October 25, 1915.

1. CARRIERS—DAMAGE TO FREIGHT—EVIDENCE OF NEGLIGENCE.—In an action for damages to freight, under the evidence, *held*, it was a question for the jury whether the carrier's negligence was the cause of the damage.

2. CARRIERS—INJURY TO FREIGHT—NOTICE WITHIN CERTAIN TIME.—A. shipped a jack over defendant railway company's line, the contract

of shipment providing that notice of injury or damage to the jack should be given the carrier within one day after it was delivered at destination. The jack was delivered on Saturday. The evidence showed it to have been negligently handled on the journey, but it showed no indication of injury until the succeeding Thursday. *Held*, the provision of the contract as to the time of notice to the carrier would not be enforced, as it was unreasonable under the facts, and since it was impossible for the shipper to know of the damage within the time provided by the contract.

Appeal from Boone Circuit Court; *John I. Worthington*, Judge; reversed.

### STATEMENT BY THE COURT.

The appellants filed their complaint against the Missouri Pacific Railway Company and the appellees herein, as receivers of the Missouri & North Arkansas Railroad Company, setting up that they had shipped a jack over the lines of the Missouri Pacific Railway Company from Smithton, Missouri, to Joplin, and from Joplin over the Missouri & North Arkansas Railroad to Bellefonte, Arkansas. They charge negligence in delaying the shipment and in moving the cars, by which numerous unnecessary jolts and jars occurred, thereby injuring the jack of appellants, to their damage in the sum of $3,500.00, for which they prayed judgment.

The service on the Missouri Pacific Railway Company was quashed and the suit proceeded against the receivers of the Missouri & North Arkansas Railroad Company. They deny that there was any negligent delay or any negligent handling of the jack on the Missouri & North Arkansas Railroad. The testimony of the plaintiff Eoff on this point is as follows:

Q. I will ask you to state, Flem, what the handling was so far as the train was concerned with reference to the jars, and jerks and jolts or its smooth operation after you left Joplin to come to Bellefonte. A. Well, we did pretty well until we got to Seligman and then from there to Eureka and up there at the tunnel. Q. Were there any jars and jerks of unusual force and character. A. Yes, sir. Q. What happened at the tunnel? A. Well,

they stuck in there. I don't know, jerked around there trying to get out of there and stayed right there quite a little bit. Q. Anything happen to the train and engine in the tunnel? A. There was something, I don't know, they jerked something out, I believe they called it a drawbar. Q. There was a jerk there? A. Yes, they cut out some cars there. Q. Cut out some cars? A. Yes. Q. The jolts and jerks were unusually heavy? A. Yes, sir. Q. Just state what was done? A. They jerked there a right smart and then come on a little piece further, over to Freeman, I believe they said it was, and they claimed the 18 hours was up. Q. Now, just go on and tell us what was done? A. Well, they stopped there —just stopped there and went to bed when we got there. Q. That is, the hands went to bed? A. The crew went to bed and just left us standing there on the sidetrack. Q. How long did you stay there? A. I don't know, not very long they sent after another outfit and they carried us a little piece further. Q Then on the way to Bellefonte what about the jerks and jars and rough handling of it? A. They handled us pretty rough from there on.

On cross-examination the witness, in answer to questions, stated that it was not as rough on the Missouri & North Arkansas as on the Missouri Pacific. He stated that he told the conductor that it was handled pretty rough, but that the other road (the Missouri Pacific), of course, handled it a "heap rougher" than this road (meaning appellees' road).

Appellees further set up that the plaintiffs violated the terms of the contract under which the jack was shipped by failing to give the written notice therein required. The contract specified: "as a condition precedent to the recovery of damages for injury to livestock, the shipper shall give notice in writing of his claim to some general officer of the company, or of the nearest station agent, or the agent at destination, and before the livestock is mingled with other livestock, and within one day after it is delivered at destination."

The plaintiffs admitted that they did not give the notice specified in the contract, and set up as justification for not so doing that "they did not know and it was impossible for them to know the true condition of the jack within the time that they were required to give the notice."

After the testimony was adduced, the court, at the request of the defendants, instructed the jury to return a verdict in their favor. The plaintiffs duly objected and excepted to the rulings of the court, and from a judgment dismissing plaintiffs' complaint, and in favor of the defendants for costs, this appeal has been duly prosecuted.

*E. G. Mitchell,* for appellants.

1. It was error to direct a verdict. Notice was given, as soon as possible, of the injury. 94 Ark. 407; 105 *Id.* 406; 90 *Id.* 308; 101 *Id.* 436; 111 *Id.* 102. Unreasonable stipulations are void. Railroads are insurers of property in transit. 100 Ark. 279, 281.

2. This was an interstate shipment. 94 Ark. 106. Appellees had no opportunity to ship under any other than a contract of limited liability. 81 Ark. 469. The contract was impossible of performance. 107 Ark. 48; 105 *Id.* 411; 90 *Id.* 308, 413.

3. The cause should have been submitted to a jury under proper instructions. 226 U. S. 491.

*W. B. Smith, J. Merrick Moore,* and *H. M. Trieber,* for appellees.

1. No written notice was given as provided. The stipulation for notice was reasonable. 14 Conn. 362; 39 Pac. 688. But if not reasonable notice within a reasonable time thereafter was required. 112 Pac. 1026; 8 So. 619. But no notice was given at all.

WOOD, J. (after stating the facts). (1) The appellees insist that the judgment was correct because there was no evidence to show negligence on the part of the appellees' road. The question of negligence under the evidence was one for the jury, especially as to whether or not appellees' employees were negligent in the handling

of the car after the same was received on appellees' road. The testimony of the appellant Eoff, set forth in the statement, made it an issue of fact for the jury to say whether or not the appellees' employees were negligent in the manner in which they handled the car that contained the appellants' jack.

(2)    It is conceded by the appellants that the notice specified in the contract was not given. The undisputed evidence on this point was to the effect that the jack was delivered to the appellants at Bellefonte on Saturday afternoon. When the jack was unloaded at Bellefonte, it appeared to be "in good health and in good condition. Looked like he was all right." Eoff, one of the appellants, discovered on Monday "some symptoms that the jack was not right." He did not know at that time what was wrong with him; didn't know but what he was foundered; "didn't know what was the matter." He was asked "How long afterwards until it seriously began to manifest itself?" and before he began to get uneasy, and answered "Well, I believe it was Thursday." The testimony of the veterinary surgeon showed that the jack had what he designated as "car founder—limanitis," "caused from standing too long and from being jerked, probably." The witness stated that unusual jerking or jars would cause it.

The appellees contend that appellants had notice of the injury to the jack on Monday, and that excluding Sunday the notice could and should have been given on Monday, and therefore that appellants had reasonable opportunity to comply with the notice requirement of the contract. Conceding, without deciding, that Sunday should be excluded, still the undisputed evidence shows that the appellants did not know on Monday that the injury to the jack was caused by the negligence of the employees of the appellees. The proof shows that they did not know until several days thereafter that the jack was injured as a result of delay and rough handling during his shipment. This court has frequently held that this provision

in contracts of common carriers, where reasonable, will be enforced; but necessarily the parties to a contract containing this provision do not contemplate, in the making of it, compliance with it where such compliance is impossible.

This court speaking of a similar provision in *St. Louis & San Francisco Rd. Co.* v. *Keller,* 90 Ark. 308, said: "This provision of the contract does not affect the liability, itself, of the common carrier created or caused by the act itself of injury or of negligence. It is not a limitation of or an exemption from liability done or caused by such act of injury or negligence. * * * It is founded upon the consideration of the original contract, and its validity depends upon its reasonableness. If it is not inhibited by any statutory enactment, and if it is otherwise reasonable, there is no reason of public policy that should declare it invalid." And further, "Its effect is to require the one who has the peculiar knowledge to inform the other who has not that knowledge to seek the facts while they exist, so that the facts may be obtained and presented by both sides."

It is manifest that the purpose of this provision is to have shipper notify carrier promptly and to enable the carrier to investigate promptly when it is notified by the shipper of the injury claimed by him to have been sustained by reason of the negligence in shipment. The carrier could not have contemplated in such a provision that the shipper should give notice within one day when the shipper himself did not know that he had sustained any damage by the negligence of the carrier. To require notice under such circumstances would be wholly unreasonable and be exacting on the part of the shipper compliance with the provision of a contract under circumstances that the parties did not have in mind when the contract was executed. This court will not uphold and enforce the provisions of such a contract where it appears from the undisputed evidence that it would be unreasonable to do so, as it does in this case. See *St.*

*Louis & San Francisco Rd. Co.* v. *Keller, supra,* and cases there cited.

But it is contended by the appellees that if the stipulation for notice within one day is not reasonable that appellants were required to give notice within a reasonable time thereafter. It does not follow that because it is unreasonable under the circumstances to enforce the contract as made by the parties that the shipper should be held to give the notice within a reasonable time after discovering the injury. This provision is purely one of contract, and while the court should refuse to enforce a contract of a public carrier made with its shipper that is unreasonable, it does not follow that the shipper should be compelled to give notice other than that required by the contract. To do this would be compelling the shipper to perform conditions which neither his contract nor the law requires. The court will not make contracts for the parties.

The court therefore erred in directing a verdict for the appellees, so the judgment is reversed and the cause remanded for a new trial.