SCULLIN *et al.*, RECEIVERS MISSOURI & NORTH ARKANSAS RAILROAD COMPANY v. EOFF

Opinion delivered January 1, 1917.

CARRIERS—DAMAGE TO FREIGHT—JACK—LIMITED LIABILITY OF CARRIER.—Appellee shipped a jack over appellant's line of railroad. There were three freight rates afforded by appellant, viz. the immigrant rate, the limited liability and the unlimited liability rates; the latter being the highest. The jack could not be shipped under the first rate, but was shipped under the second contract, appellee paying the limited liability rates. The jack was injured in transit *Held*, although appellee had no knowledge of the existence of an unlimited liability contract, that having shipped under a contract limiting liability he was bound thereby.

Appeal from Boone Circuit Court; *John I. Worthington*, Judge; modified and affirmed.

*W. B. Smith, J. Merrick Moore* and *H. M. Trieber,* for appellants.

1. This was an interstate shipment. Alternate rates were not denied the shipper, but were offered him. He accepted and chose the cheaper rate and agreed to the released valuation clause in the bill of lading. That is the limit of recovery here. 241 U. S. 319; 233 *Id.* 97; 111 Ark. 430; 226 U. S. 491.

2. The verdict is excessive and the cause should be reversed unless appellees remit all in excess of $100.00.

*G. J. Crump* and *E. G. Mitchell,* for appellees.

1. Plaintiffs asked for the two rates and the agent refused all but the one which was paid. Plaintiffs showed the agent the jack and told him it was worth $2,000.00. Defendant's agent charged the highest rate and offered no other. The company is liable for the full value of the animal. 94 Ark. 106; 81 *Id.* 469; *Eoff* v. *Scullin, Receiver,* 120 Ark. 452.

SMITH, J. Appellees shipped, in interstate commerce, as part of a mixed shipment of live stock, a jack, from Smithton, Missouri, to Bellefonte, Arkansas. The jack developed car founder as a result of rough handling and delay in transit. The shipment moved over the Missouri Pacific Railway from Smithton to Joplin, and thence to destination over the line of appellants. It was appellees' intention to ship directly through to their destination, but the agent of the initial carrier billed the jack only to Joplin, at which point shipments from one road were diverted to the other, and the shipment was re-billed at Joplin to its final destination. The rate paid at destination was $99.70, being the rate from Smithton to Joplin on the basis of the valuation of the jack released to $100.00, plus a $2.00 switching charge at Joplin, plus the rate from Joplin to Bellefonte on the released valuation basis. The combination of rates paid by appellees exceeded the through rate from Smithton to Bellefonte, on the basis of the valuation released to $100.00, by the sum of $28.40. This excess charge was

voluntarily refunded.    According to appellants the
refund was made when, upon checking up, it was
ascertained that appellees were entitled to it and should
have been charged only the joint rate, instead of the
combined local rates.    But according to appellees the
refund was made only when the information had been
communicated to appellants that this suit would be
brought.

At the time of this shipment there were three rates
in force.    The lowest of these is the immigrant rate, to
which appellees would not have been entitled, and under
which they did not undertake to ship.    The second rate
is the one commonly used and designated as the limited
liability contract.    The third form of contract is for
unlimited liability, and the amount of the rate under
that contract depends upon the declared valuation.
An addition of 25 per cent. to the rate based on a valua-
tion not exceeding $100.00 is charged for each $100, or
fraction thereof, in excess of a hundred dollars.    For
instance, if the jack had been declared to be worth
$500.00, the rate would have been 200 per cent. of the
released valuation rate.    In other words, there was an
increase of one-fourth of the limited liability rate for
every $100.00 of excess valuation.    The tariff sheets
further provided that animals of a declared valuation
exceeding $800.00 per head would be carried only by
special arrangement.

A judgment was rendered for $2,250.00, the full
value of the jack, and it is insisted by appellants that
it is liable only to the extent of the hundred dollars on
account of the provision to that effect in the contract of
shipment.    Appellees say they should be allowed to
recover the full value of the jack because they were
denied the right to ship under any other contract, and,
as we understand their position, they claim the benefits
of an unrestricted contract because they were afforded
the opportunity only of shipping under the contract
issued them.

We have searched this record in vain for any evi-
dence to support a finding that appellees desired to ship

under an unlimited contract. The proof does show that they made complaint against the rate which was charged and that the agent told them they would ship under this contract if they shipped at all. But there is nothing in the testimony of appellees themselves to show, or intimate, that they complained about the limitations of liability; nor is there any proof that they desired to ship, or would have shipped, under the higher rate had the opportunity been afforded, and while they did testify that they discussed the value of the jack with the agent of the initial carrier, the proof is to the effect that they were complaining against the excessiveness of the rate charged. They testified that when the car was re-billed at Joplin, Missouri, the agent of the railway there told appellees they could have saved money by telling a lie and claiming they had an immigrant car, as shipments of that character went at the cheaper rate. Appellee Eoff testified that he asked this agent why it was that he could ship a car of stock from Bellefonte to Kansas City at a lower rate, and was told that his shipment was a mixed one and that he paid on the entire shipment at the highest rate charged for any part of the shipment. He also testified that he requested a lower rate and that it was refused.

It appears that appellees shipped at the lowest available rate. They were not entitled to the immigrant rate, and therefore had no choice of shipping under it. The testimony would support a finding that they knew nothing of the unlimited liability rate and were not told about it. But there is no testimony that they desired such a contract, or would have used it had it been available. Their complaint to the agent was that the rate charged was too high, and they paid this rate only because they were told they would have to do so if they shipped at all.

In the recent cases of *C. N. O. & T. P. Ry. Co.* v. *Rankin*, 241 U. S. 319, and *B. & M. Rd. Co.* v. *Hooker*, 233 U. S. 97, and in other decisions of the Supreme Court of the United States there cited, the law is declared to be that it is immaterial that the shipper does not know

of the choice of rates if such choice exists. It may be the law that, notwithstanding the carrier has complied with the law by establishing the different rates, and filing the proper tariff schedules with the Interstate Commerce Commission, and thereby entitled to use a form of contract restricting liability; yet if they deny shippers the right of choice between the forms of contract and require the use of a restricted liability contract, they cannot claim that exemption from liability which inures to the carrier which had in fact offered its shippers this choice. But this record does not present that question.

We have no right whatever to inquire into the reasonableness of any of these rates, and it is not denied that appellant had the right to use the form of contract here employed, and as the proof does not show any refusal to permit appellees to ship under the more expensive form of contract we must modify the judgment to conform to the stipulations of the contract under which the shipment was made.

Appellees argue that the decision upon the former appeal is the law of this case (*Eoff* v. *Scullin et al., Receivers, etc.*, 120 Ark. 452), and that it was there held, in effect, that this was a common law contract of shipment with all the liabilities incident thereto. Such, however, is not the effect of that decision. Upon the former trial from which that appeal was prosecuted the court below held that there could be no recovery of any amount because the shipper had not given notice of the injury and damage to the jack within one day after arrival at its destination as stipulated in the contract. We held this provision unreasonable and unenforceable as applied to the facts of that case and remanded the cause for further proceedings. No other question was there determined.

The judgment of the court below will be reduced to $100.00, and, as thus modified, will be affirmed.