KINCHELOE, *Appellant*, v. PRIEST, *Executor*.

1. **Bailment.** The confidence induced by undertaking services for another is a sufficient consideration for a faithful discharge of the trust, and a depositor makes out a *prima facie* case even against an unpaid bailee by showing a deposit made, demand for and refusal of the thing deposited.

2. **Bailee, Negligence of:** BURDEN OF PROOF. But in an action against one, founded on his negligence in permitting a note received by him for collection to be barred by the statute of limitations before taking the proper steps to collect it, the burden of proof is on the plaintiff, and he must show each material fact necessary to create a liability.

3. **Presumption.** There is no presumption in such case that the note was recived for collection without compensation.

4. **Question of Fact.** It was a fact to be determined by the jury from all the circumstances, in the absence of direct evidence on the question, whether the note was to be collected with or without compensation.

5. **Bailment :** COLLECTING NOTE : DEGREE OF CARE. An instruction given to the jury to the effect that the care required of the bailee of the note in collecting it was the same kind of care that an ordi-

Kincheloe v. Priest.

nary prudent man would have used with his own business affairs. stated the law favorably for plaintiff.

6. **Evidence.** Where a party is incompetent to testify because the other party is dead, it is proper to resort to any circumstances. having a tendency to throw light upon the particular transaction. in question.

*Appeal from Scotland Circuit Court.*—HON. B. E. TURNER, Judge.

AFFIRMED.

*Smoot & Pettingill* for appellant.

(1) The verdict of the jury was against the evidence. (2) Instructions numbers one, two, three, four and five should have been given as offered by appellant. (3) Instruction number ten, given by the court of its own motion, and number twelve, given for defendant, were not in accord with the law applicable to the evidence. (4) The note executed by Kincheloe to Green, and read in evidence by defendant, was incompetent. (5) The making of the contract, delivery of the notes, and the acceptance of the notes for collection, and the procedure to collect the same, show a consideration, and Green should have been held to a full discharge of his undertaking. 2 Parsons on Contracts [7 Ed.] *98; 1 *Ibid* [7 Ed.] *447, and notes; 1 Smith's Lead. Eq. Cases, top page 346; 2 Kent's Com. [6 Ed.] 568; *Huxley v. Hartzell*, 44 Mo. 370. (6) And the suffering of the statute of limitations to run was negligence in law, and would have made Green liable, Wharton on Neg. [Ed. 1874] secs. 420, 435, 438, 439, 490 to 501, inclusive; also 503–547; *Green v. Hollingsworth*, 30 Am. Dec. 680. (7) After the execution, delivery and acceptance of the contract, and the delivery of the notes were shown, the burden should have been upon defendant to account for the property. Whart. on Neg. [Ed. 1874] sec. 422, and notes; *Wiser v. Chesly*, 53 Mo. 547.

W. T. *Kays* and D. H. *McIntyre* for respondent.

(1) The action is one at law for negligence either in failing to collect or to pay over money collected. He who charges negligence must prove it. Angell on Carriers [4 Ed.] sec. 38; Story on Bailments [7 Ed.] sec. 213; *McCarthy v. Wolfe*, 40 Mo. 520. (2) Trustees and bailees are presumed to have done their duty and negligence is not to be presumed against them. 1 Phillip's Evidence [5 Ed.] side page 605; Angell on Carriers [4 Ed.] sec. 38. It is neither alleged nor proved that Green converted Kincheloe's money to his own use, nor that there was any demand or refusal to pay over the money. (3) The instructions given sufficiently placed the law applicable to the case before the jury. (4) The court did not err in admitting in evidence the note of plaintiff to Green for three hundred and sixty dollars.

BLACK, J.—The plaintiff, in 1867, before leaving this state, gave to the defendant's testate, Green, fourteen notes, and took a receipt therefor, in which it is stated that the notes are to be collected and accounted for. Green died in 1882, and plaintiff filed an account in the probate court, giving a list of the notes and stating that he did not know whether the notes had been collected; that they could have been collected, and if not, deceased suffered them to become barred by the statute of limitations; that deceased was to have five per cent. for his services, and that the estate owed him, etc.

Three of the notes, signed by Downing and others, and one small one signed by Green, in all amounting to about seven hundred dollars, were found by the executor among the papers of the deceased, with credits upon the Downing notes.. Some correspondence offered in evidence shows that from 1867 to 1882, Green collected

and remitted to the plaintiff various sums of money, and the evidence is strong to the effect that he remitted, or applied, all money collected. Green, in a letter dated in 1867, says Downing had promised payment in the following January. In 1881, he says Downing had promised several times to pay, and expressed some fears about the Arnold note, and in 1882, speaking of this same note, which was signed by Downing, he says he let the date slip out before he knew it, and that Mr. Downing said "a note never dies with him." The real contest is as to the barred notes.

The court, for the plaintiff, instructed the jury that if deceased, while in the discharge of his trust, negligently permitted the statute of limitations to run against a part of the notes, and by reason of said neglect the debts were lost, then the plaintiff was entitled to recover; and refused to instruct that if the notes could have been collected by resorting to legal means, and yet were allowed to run until barred, the plaintiff should recover. The court, of its own motion, in substance, told the jury that if the deceased, in his lifetime, exercised the same kind of care in the collection of the notes that an ordinary prudent man would have done with his own business affairs, then the verdict thould be for the defendant as to the barred notes.

1. There is no doubt but the confidence induced by undertaking services for another is a sufficient consideration for a faithful discharge of the trust. 2 Parsons on Contracts [6 Ed.] 98. And a depositor makes out a *prima facie* case, even against an unpaid bailee, by showing a deposit made, demand for and refusal of the thing deposited. *Huxley v. Hartzell*, 44 Mo. 370; *Wiser v. Chesley*, 53 Mo. 547. But this case does not assume that form of action. So far as the barred notes are concerned, it is based upon negligence of the deceased. In all such actions the burden of proof rests upon the plaintiff, and he must prove each material fact

necessary to create a liability.    Edwards on Bailments,
sec. 106.    The first refused instruction asked the court
to tell the jury that the written agreement, the receipt,
implied a consideration to be received by Green out of
the notes to be collected by him.    The receipt did not so
say, and it was not the proper province of the court to
so declare.    The evidence must determine whether the
undertaking was gratuitous or not, and the jury should
take all the circumstances into consideration.    The
plaintiff does not appear to have made any effort to
show that Green was to have any compensation, nor did
he seek to have that question submitted to the jury as a
question of fact, but relied upon a supposed presump-
tion of law which does not arise in this case.    It is said
in Schouler on Bailments, page 35, if the bailee received
the thing in the usual course of his business, and busi-
ness usage, or his known method of dealing with other
customers, gave him the right to demand compensation,
then the trust, though accepted without express refer-
ence to a charge for services, is not to be taken as gratu-
itous.    Further on the same author says: "But attendant
circumstances should be allowed their weight; and where
one undertakes, for a near relative or personal friend, or
out of mere charity or favor, and more especially if ac-
complishing the trust puts him to little outlay of time,
trouble, and skill, and the bailment lies outside his re-
munerated field of labor, we may well presume the
undertaking to have been gratuitous."    And in *Mariner
v. Smith*, 5 Heisk. [Tenn.] 203, where one deposited a
quantity of gold with a firm engaged in the boot and
shoe business, and the gold was stolen from the safe of
the merchants, it was held to be error to instruct the
jury that if the nature of the bailment was of such a
character as to require extraordinary care and responsi-
bility on the part of the bailee, the law will imply a
reward.    Here there is no direct evidence showing that
Green received or was to receive any compensation.    The

parties appear to have been personal friends and neighbors. Green was a farmer and conducted a small country store, and there is no claim that he in any way assumed to be a collecting agent. These ffacts all tend to show that the undertaking was gratuitous. If the plaintiff desired to put the case before the jury on the theory that Green was a paid agent, he should have asked the court to submit that question to the jurors as a question of fact; but it is evident no such a claim was made, or intended to be made on the trial, save by way of a presumption of law. The instruction was properly refused.

In Edwards on Bailments, section 77, it is said: " And there is a class of cases in which, without any delivery of goods or property, an unpaid agent is held responsible for the use of diligence in the business he undertakes; as where a man receives a demand to collect gratis * * * The effort to collect must be made with ordinary diligence." This is stated to be the rule in this class of cases in *Newell v. Newell*, 34 Miss. 385, which is a case in some of its features resembling the present one. The degree of care which the court required of the deceased in the collection of the notes was the same kind of care that an ordinary prudent man would have used with his own business affairs. This stated the rule favorably to the plaintiff. Nothing appears to have been said in the evidence as to the solvency of the makers of the notes, though it was probably assumed on trial by both parties to the suit, that something could have been made out of Downing by suit. There is no claim of want of good faith on the part of the deceased. The instruction presented the case fairly enough.

2. There was no error in allowing the defendant to read in evidence a note made by plaintiff to Green for three hundred and sixty dollars, dated in 1859, and found also among the papers of the deceased. It would

have been natural, and in the ordinary course of affairs, for Green to have applied collections in payment of this note. One party being dead, and the other thereby rendered incompetent to testify, it was proper to resort to any circumstances having a tendency to shed light upon the particular transaction in question.

The judgment is affirmed. Sherwood, J., and Henry, C. J., dissent. The other judges concur.

HENRY, C. J., DISSENTING.—In *Dougherty v. White-head*, 31 Mo. 257, this court held, Scott, J., delivering its opinion, that: "Where one man, at the request of another, performs beneficial services for him, *unless it is agreed*, or it can be so inferred from the circumstances, that the services were to be rendered without compensation, *the law, in the absence* of an express contract, will imply a promise on the part of him for whom the services were rendered, to pay for them what they are reasonably worth." It is a well recognized principle of the common law, enunciated in every text book on the law of contracts.

Plaintiff asked the court to declare it as the law to the jury, but this was refused. When plaintiff proved the written agreement between him and the intestate, the law, in the absence of any other testimony as to compensation to be paid to the intestate, implied the promise to pay him a reasonable compensation for his services, and when the circumstances upon which defendant relied as proving that the service was to be gratuitous were introduced in evidence, it was for the jury to determine whether they established that fact. Plaintiff made his *prima facie* case when he closed his testimony, and should have had the benefit of an instruction as above indicated, throwing the burden of proving that the contract was for gratuitous service upon the defendant. It was not for the court to determine that question against the plaintiff. I say nothing as to the

effect of the testimony offered to prove that defendant was not to be compensated for collecting the notes. It was peculiarly the province of the jury, under proper instructions, to pass upon that question. Judge Sherwood concurs.