PATTON v. TEXAS & P. RY. CO. et al.
TAYLOR v. SAME.

(Court of Civil Appeals of Texas. Texarkana. May 4, 1911. Rehearing Denied May 25, 1911.)

1. CARRIERS (§ 219*) — CARRIAGE OF LIVE STOCK—CONNECTING CARRIERS—NOTICE TO DIVERT SHIPMENT.

Where stock was carried over connecting railways and there was no statute making it the duty of the first to notify the second carrier that the shipper wished to divert the shipment, and the contract expressly provided that the first carrier should be released of all liabilities after delivery of the stock to the connecting carrier, the initial carrier, after delivering the shipment to the second carrier was not liable for its failure to notify the latter that the shipper wished the shipment diverted.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 950, 951; Dec. Dig. § 219.*]

2. CUSTOMS AND USAGES (§ 18*) — APPLICATION TO CONTRACTS—NECESSITY OF PLEADING.

A custom cannot be treated as entering into and forming a part of a contract between parties unless it is pleaded.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 40; Dec. Dig. § 18.*]

3. CARRIERS (§ 219*) — CARRIAGE OF LIVE STOCK — DUTY OF INITIAL CARRIER — STATUTE.

Under the Act to Regulate Commerce (Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]), as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 595 (U. S. Comp. St. Supp. 1909, p. 1166), providing that any common carrier receiving property for transportation from a point in one state to a point in another state shall issue a bill of lading therefor, and shall be liable to the holder for any damage, whether caused by it or any connecting carrier, an initial carrier, which was under no obligation, by contract or otherwise, to notify a connecting carrier that the shipper desired a diversion of the shipment at a point on the connecting carrier's line, having delivered the shipment to the connecting carrier was not liable for failure of the connecting carrier

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

137 S.W.—46

to make the diversion, as no fault was attributable to the connecting carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 950, 951; Dec. Dig. § 219.*]

4. APPEAL AND ERROR (§ 1002*)—VERDICTS—CONCLUSIVENESS.

A finding by the jury upon conflicting evidence is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935-3937; Dec. Dig. § 1002.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Actions by J. C. Patton against the Texas & Pacific Railway Company and others, and Stanley Taylor against the same defendants. From a judgment for defendants, both plaintiffs appeal. Affirmed.

M. C. Smith and Templeton & Agerton, for appellants. Spoonts, Thompson & Barwise and Chapman & Lockett, for Texas & P. Ry. Co. Glass, Estes, King & Burford, for Kansas City Southern Ry. Co.

WILLSON, C. J. June 6, 1908, Patton delivered one car and Taylor delivered five cars of cattle to the Texas & Pacific Railway Company at Ft. Worth, Tex., for transportation from that point to Kansas City, Mo. The respective shipments left Ft. Worth at the same time, in the same train, and on their arrival at Texarkana on the next day were delivered by said railway company to its connecting carrier, the Kansas City Southern Railway Company, for transportation from that point to Kansas City. The latter company carried the cattle on towards Kansas City as far as Mena, Ark., where they arrived on the morning of June 8th. It was then ascertained that on account of high water prevailing at Kansas City the cattle could not be carried to the stockyards there. Therefore they were detained at Mena until June 17th, and then at Neosho, Mo., further on towards Kansas City, until June 23d, when, in accordance with instructions given by the owners thereof, the shipments were diverted and sent over another line of railway to East St. Louis, Ill., where they arrived June 24th. Several of the cattle died, and others lost in weight and appearance. The owners were thereby damaged, and they claimed they were further damaged because they were forced to sell the cattle at a less price than they could have sold them for had there been no delay in transporting them. The owners further claimed that the loss incurred was due to negligence on the part of the railway companies. Each of them brought a suit against the companies. The suits were consolidated and tried as one suit. The verdict and judgment were in favor of the companies.

The action of the trial court in overruling their motion for a new trial is attacked by appellants Patton and Taylor as erroneous, because "the verdict and judgment," it is recited in the assignment, "is not supported or warranted by the evidence, and because the evidence preponderates so strongly against the verdict and judgment as to show that same is clearly wrong, unjust, and oppressive." The contention, so far as the Texas & Pacific Railway Company is concerned, is based upon the fact that undisputed testimony showed that appellants on June 8th verbally, and on June 9th in writing, requested it to divert the shipments from Kansas City to East St. Louis, and upon the claim that it negligently failed to communicate the request to the Kansas City Southern Railway Company, then in possession of the cattle; and so far as the last-mentioned company is concerned, upon the claim that, when it ascertained that the cattle could not be carried into Kansas City, it negligently failed to communicate the fact to appellants and obtain from them instructions as to the disposition to be made of the cattle under those circumstances, and upon the fact that it refused, when requested by their agents on June 17th and June 20th, to do so, then to divert and forward the cattle to East St. Louis.

[1] The testimony was undisputed that the Texas & Pacific Railway Company did not communicate the requests that the shipments be diverted to East St. Louis, made to it June 8th and 9th, to the Kansas City Southern Railway Company until June 22d. Assuming that the shipments would have been diverted as requested by appellants, and the loss sustained by them thereby averted, had such instructions been promptly communicated to the last-named company, if the Texas & Pacific Railway Company legally was bound to promptly communicate the instructions, we would be of the opinion that the contention that the finding in its favor was against the evidence in the case should be sustained, because the testimony was undisputed that it did not promptly communicate the instructions. Indulging the assumptions suggested, the question for determination may be said to be: Was the Texas & Pacific Railway Company legally bound to communicate appellants' instructions to the Kansas City Southern Railway Company? If it was, it must have been by force of its contract with appellants, or because some statute made it its duty to do so; for it performed its whole duty as a carrier under the common law when it safely transported the cattle over its own line and within a reasonable time delivered them to its connecting carrier at Texarkana. 4 Elliott on Railroads, § 1432. We have been referred to and know of no statute applicable to the shipments, imposing such a duty upon it. It would seem, therefore, that it did not owe appellants such a duty, unless it bound itself by the contracts covering the shipments to communicate the instructions to the Kansas City Southern Railway Company. Neither of those con-

tracts in terms bound it to perform such a service for appellants. Its undertaking by the terms of the contracts was confined to the transportation of the cattle from Ft. Worth to Kansas City, and a delivery of same to the consignee at the latter place; and this undertaking was subject to a limitation specified in the contracts as follows: "It is further stipulated and agreed between the parties hereto that in case the live stock mentioned herein is to be transported over the roads of any other railroad company, then said party of the first part (the Texas & Pacific Railway Company) shall be released from liability of every kind after said stock shall have left its road, and the party of the second part (the consignor) hereby so expressly stipulates and agrees, it being distinctly understood that the liability of the Texas & Pacific Railway Company in respect to said stock and under this contract is limited to its own line of railway and will cease and its part of this contract be fully performed upon delivery to its next connecting carrier of the stock mentioned herein and receipted for hereby. The understanding of both parties hereto being that the party of the first part shall not be held or deemed liable for anything in connection with said stock beyond its own line of road, excepting to protect the through rate of freight named herein." It is plain, therefore, that a duty on the part of the Texas & Pacific Railway Company to communicate appellants' instructions to the Kansas City Southern Railway Company cannot be referred to any express stipulation in the contracts. It seems to be contended that such a duty arose from a custom, claimed to have been established by the testimony, whereby the initial carrier when requested to do so caused such shipments to be diverted while enroute, after they had passed from its custody to the custody of a connecting carrier.

[2] That such a custom existed and that the contracts were executed by the parties with reference to it was not alleged in appellants' petition. The rule seems to be that before such a custom can be treated as entering into and forming a part of a contract between parties it must be pleaded. Anderson v. Rogge, 28 S. W. 106; Norwood v. Ins. Co., 13 Tex. Civ. App. 475, 35 S. W. 717; Gano v. Palo Pinto Co., 71 Tex. 103, 8 S. W. 634; Johnson v. Buchanan, 116 S. W. 875; 22 Ency. Plead. & Prac. 406. But had such a custom been pleaded, we do not understand its existence to have been established by uncontroverted testimony, as appellants assume it was. The testimony of the witness Fenby, auditor of the Texas & Pacific Railway Company, through whom, according to the custom contended for, diversions of such shipments were made, that the diversion in this instance failed so far as the Texas & Pacific Railway Company was concerned, "because the cattle had passed out of its possession

before the request was made," indicates, we think, that he did not recognize as existing a custom imposing a duty on the company he represented to have the shipments diverted after they left its line of railway. To our minds the testimony in the record relied upon to show the existence of such a custom is indefinite, and for that reason not entirely satisfactory. As opposing it, we think the testimony of the witness Fenby, to which we have called attention, was sufficient to raise an issue as to its existence, even if appellants were in a position to claim anything on account of the custom, if it existed. If, therefore, the custom asserted had been pleaded, we could not say that the verdict and judgment were wrong because all the testimony, or even a clear preponderance thereof, showed that the Texas & Pacific Railway Company failed to discharge a duty it owed appellants.

[3] It is further insisted that, the shipments having been made from a point in this state to a point in another state, as the initial carrier the Texas & Pacific Railway Company was liable for all the damages appellants sustained by force of section 20 of the "Act to Regulate Commerce" (Act Feb. 4, 1887, c. 104, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]), as amended by Act June 29, 1906, c. 3591, § 7 (34 U. S. Statutes at Large, p. 595 [U. S. Comp. St. Supp. 1909, p. 1166]). The particular portion of said section relied upon as supporting this contention is as follows: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed." We do not think the statute has any application to the question presented here. The liability it imposes on the initial carrier for conduct of the connecting carrier is referable entirely to acts and omissions which render the latter liable as a common carrier. Had the connecting carrier in this case refused, on proper demand made of it to do so, to divert the shipments, it may be that such refusal would have been a violation of its duty as a common carrier (4 Elliott on Railroads, §§ 1431, 1440, 1536; 2 Hutch. Car. §§ 660, 661; 5 A. & E. Enc. Law, pp. 214, 215; Ryan v. Ry. Co., 90 Minn. 12, 95 N. W. 758), and that the Texas & Pacific Railway Company as the initial carrier, by force of the statute, would have been liable to appellants for damages suffered by them as a consequence of such a refusal. But the

effect of the finding of the jury was to determine that the connecting carrier had not been guilty of a failure to perform its duty with reference to the shipments. The liability, if any, of the Texas & Pacific Railway Company, therefore, cannot be referred to its responsibility under the statute for conduct of its connecting carrier, but must be referred to its own conduct, without reference to the statute. In other words, if liable at all, it was not because of a default of a connecting carrier, but because of its own default in failing to communicate the instructions to divert to its connecting carrier. A duty to do this did not by law rest upon it as a common carrier. Therefore, if it became its duty, it must have been because it contracted with appellants as their agent to cause the diversion to be made by the connecting carrier. As stated before, the contract was not so written, and appellants are not in a position to claim such to have been its effect by force of the custom asserted to have existed. If such an undertaking was not a part of those contracts, a promise subsequently made by the Texas & Pacific Railway Company to communicate appellants' wishes with reference to the shipments to the carrier in possession of same would be a gratuitous undertaking, and for that reason could not be made the basis of the recovery sought by appellants.

[4] So far as the complaint made on this appeal refers to the finding of the jury in favor of the Kansas City Southern Railway Company, we think it also should be overruled. Whether that company was guilty of negligence, when it ascertained that the cattle could not be delivered in Kansas City, in failing to notify appellants of the fact and obtain from them instructions as to the course to be pursued, or not, and whether it was guilty of negligence in failing to divert the shipments to East St. Louis earlier than it did so divert them, or not, were controverted questions in the case. Had the jury found such failures on its part to have been negligence, the finding would have been supported by testimony in the record. Their finding to the contrary also is supported by testimony in the record. In this condition of the record the finding of the jury should not be set aside.

The judgment is affirmed.