TEXAS MIDLAND R. CO. v. CUMMER MFG. CO. (No. 1996.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 20, 1918. On Motion for Rehearing, Dec. 25, 1918.)

1. CARRIERS ⬳116—DIVERSION OF SHIPMENT —NEGLIGENCE.

Where agent of carrier consented to cause diversion of shipment and secured change in destination, and by negligently giving erroneous directions concerning consignee caused loss, carrier was liable.

2. CARRIERS ⬳80—DIVERSION OF SHIPMENT.

Instructions for change in destination of freight must emanate from party who is real owner, or one who has authority to divert; otherwise carrier alters destination at its peril.

3. CARRIERS ⬳177(3)—CONNECTING CARRIERS — DIVERSION OF SHIPMENT — CONCURRING NEGLIGENCE.

Carrier was liable for negligence in diverting shipment, resulting in loss of the goods, though negligence of agent was not sole cause of loss, but concurred with that of connecting carrier.

On Motion for Rehearing.

4. EVIDENCE ⬳593—HEARSAY—SUFFICIENCY.

Hearsay testimony, unsupported, is insufficient to establish an essential fact.

5. CARRIERS ⬳123—DIVERSION OF SHIPMENT —PROXIMATE CAUSE OF LOSS.

If shipper knew, or should have known, that shipment had been billed to original consignee, and was being held in Mexico, after negligent diversion by initial carrier, for tariff charges, but made no effort to redeem or forward it, failure of carrier correctly to designate new consignee in order of diversion was not proximate cause of loss of shipment through sale to pay customs charges.

6. CARRIERS ⬳134—DIVERSION OF SHIPMENT —NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

In suit by shipper for loss of shipment as caused by negligence of carrier's agent in effecting diversion, evidence that negligence of agent was cause of loss *held* insufficient to support verdict for plaintiff.

Appeal from Lamar County Court; Tom L. Beauchamp, Judge.

Action by the Cummer Manufacturing Company against the Texas Midland Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed, and cause remanded.

Dashiell, Terry & Brown, of Terrell, Coke & Coke and S. W. Marshall, all of Dallas, and Wright & Patrick, of Paris, for appellant.

Long & Wortham and A. P. Park, all of Paris, for appellee.

HODGES, J. The appellee is a private corporation, with its place of business at Paris, Tex. The judgment recovered in this case against the appellant is based upon a claim that appellant's agent negligently failed to properly divert a carload of crates which had originally been billed for shipment to Ida Muller at Laredo, Tex.

The facts show that J. W. Warren was the president and manager of the appellee's business at Paris; that he was represented by a sales agent, J. A. McGill, at Laredo, Tex. On the 17th of February, 1913, the appellee delivered a carload of crates to the appellant, consigned to Mrs. Ida Muller, care of Warehouse No. 2, Laredo, Tex. The goods were routed over the appellant's line, the Missouri, Kansas & Texas Railway and the International & Great Northern Railway. On the 19th of February Warren desired to change the destination of the shipment, and requested the appellant's agent at Paris to have the shipment diverted from Laredo, Tex., with Mrs. Ida Muller as consignee, to Columbus, Mexico, with J. W. Murray as consignee. Appellant's local agent at Paris wired its general manager, F. B. McKay, requesting that the

diversion be made. McKay undertook to intercept the shipment before delivery to the International & Great Northern Railway Company, and directed its diversion from Laredo, Tex., to Columbus, Mexico, but failed to direct a change in the name of the consignee as requested by Warren. On February 20th Warren wired to James Beatty, assistant general manager of the Wolvin Line at Texas City, advising him that the car of crates had been diverted from Waco on that date, via the Missouri, Kansas & Texas Railroad, billed to J. W. Murray, Columbus, Mexico, and asking him to make an effort to get the car on the boat which left that point on Saturday following. Beatty immediately wired H. W. Landman, commercial agent of the Missouri, Kansas & Texas Railway, that the car from Paris to Tampico, due at Waco that day, must arrive at Texas City on Saturday the 22d, and to start a wire tracer. The car was diverted by the Missouri, Kansas & Texas Railway, but arrived at Texas City too late for shipment on Saturday. Warren, being under the impression from information received that the next boat would not sail from that point to Mexico until March 4th, directed that the goods be again diverted to another consignee at another point. But this message did not arrive till after the goods had been shipped over the Wolvin Line on the 24th to Tampico, Mexico. The agent of the Wolvin Line received from the Missouri, Kansas & Texas Railway Company what they called a "transfer slip," which gave the name of Ida Muller as the consignee at Columbus, Mexico; and this was accepted as giving the correct shipping instructions. The crates arrived at the docks on February 24th, were unloaded on the Wolvin Line wharf on the 25th, and loaded on the steamship City of Tampico the same day. The Wolvin Line issued its bill of lading, showing the shipment consigned to Mrs. Ida Muller, Tampico, but, with final consignee, Mrs. Ida Muller, Columbus, Mexico, the original bill of lading was sent with the shipment, as required by the Mexican authorities in Tampico. James Beatty, the agent of the Wolvin Line, mailed a copy of its bill of lading to the Cummer Manufacturing Company at Paris the day after the steamship sailed from Texas City. Warren testified that he did not remember receiving that bill of lading. J. A. McGill testified that he did not know that the Wolvin Line had issued the bill of lading. Beatty, the agent of the Wolvin Line, did not inquire of any one about the apparent conflict in the name of the consignee mentioned in the telegram and letter received from Warren, and that contained in the transfer slip delivered to him by the Missouri, Kansas & Texas Railway Company at Texas City; but in construing the telegrams and letter he had received, together with the transfer slip delivered by the Missouri, Kansas & Texas Railway Com-

pany, concluded that J. W. Murray was the original consignee, and Ida Muller was the new consignee. The steamer upon which the goods were shipped arrived at Tampico on March 1st. On the same date the agent of the Wolvin Line received a telegram from the appellee, requesting it to divert the car in question to J. A. McGill, Laredo, Tex., but failed to do so, as it was then out of control of the Wolvin Line, since the vessel had cleared from Texas City, because of the requirements of the Mexican customs authorities. The evidence shows that no arrangements had been made for payment of the import tax levied by the Mexican authorities at Tampico, and that the goods were unloaded and held for these charges. It appears that J. W. Murray inquired several times at Tampico for goods shipped to him as consignee, but was informed that none were there. Notice was put in the mail, addressed to Mrs. Ida Muller, Columbus, Mexico, but met with no response, presumably for the reason that her post office address was Laredo, Tex. The crates remained for some time in the custody of the Mexican custom house authorities, and were finally sold to pay the import tax.

Under the charge given the jury found that the appellant's agent was guilty of negligence in failing to give the correct name of the consignee in ordering the goods diverted from Laredo, Tex., to Columbus, Mexico, and that this negligence was the proximate cause of the loss.

[1] It is contended here, as it was in the trial below, that if it be conceded that the facts alleged and proved by the appellee are true, they do not create any legal liability against the appellant, for the reason that the law did not impose upon it the duty of diverting the freight and there was no contractual undertaking to perform that service. In support of that proposition we are referred to the case of Patton v. Texas & Pacific Ry. Co., 137 S. W. 721, decided by this court. In that case it was held that the initial carrier was under no legal duty to cause the diversion of freight that had left its line to a different destination from that mentioned in the original bill of lading, unless such a duty was specially assumed in the contract of shipment. The prominence of that issue of law in that case was such that the subsequent refusal of a writ of error by the Supreme Court should, we think, be regarded as an approval of the ruling. But the facts of this case are materially different. There the agent of the carrier never undertook to divert the shipment, nor agreed to do so. Here the carrier's agent not only consented to cause the diversion, but actually secured a change in the destination, but, by giving erroneous directions concerning the consignee, caused a loss of the goods. It may be true that the appellant owed the shipper in this instance no duty to

undertake to change the destination of the goods after they left its line, and could not have been held for the consequences of a refusal to do so. But the same immunity from liability does not exist when the service is undertaken and is so negligently performed that damages result. When the appellant's agent consented and actually entered upon the performance of the service of changing the destination of the freight, the attitude of the parties was changed, and a situation was produced in which there was a sufficient consideration to bind the appellant to a reasonably prudent performance of its engagement. Glavin v. Rhode Island Hospital, 12 R. I. 411, 34 Am. Rep. 685; Pollock v. Carolina, etc., B. & L. Ass'n, 51 S. C. 420, 29 S. E. 77, 64 Am. St. Rep. 683, 689; Hammond v. Hussey, 51 N. H. 40, 12 Am. Rep. 41; Kincheloe v. Priest's Executors, 89 Mo. 240, 1 S. W. 235; 5 Thompson on Corp. § 6357; 6 Co. Jur. 1118; 9 Cyc. 310.

In Pollock v. Carolina, etc., B. & L. Ass'n, the court quoted with approval the following language:

" 'The confidence induced by undertaking any service for another is a sufficient legal consideration to create a duty in the performance of it.' * * * The principle which governs the liability of a corporation for failing to perform a duty voluntarily assumed is precisely the same as that which governs the liability of an individual in the like case."

[2] One who undertakes to change the destination of freight and negligently causes it to be missent is in the same legal situation as one who accepts goods for transportation and negligently delivers them at the wrong place. If loss results, the fact that the undertaking is voluntary no more excuses negligence in one case than it does in the other. That form of negligence under such circumstances amounts to more than mere inaction; it is affirmative misconduct. The situation here would not have been materially different had the appellant's agent committed an error both in the destination and in the name of the consignee. The attitude of the initial carrier toward the shipper in cases of this character, even after it has delivered the goods to its connecting carrier, is not in all respects the same as that of an entire stranger to the transaction. Instructions for a change in the destination of freight must emanate from the party who is the real owner, or one who has the authority to divert; otherwise the carrier alters the destination at its peril. N. C. & St. L. Ry. Co. v. Grayson County Nat. Bank, 100 Tex. 17, 93 S. W. 431; 1 Hutchinson on Carriers, §§ 177, 193, 194. Such instructions must usually be delivered by telegraph, leaving little time for an intermediate or terminal carrier to investigate the matter of ownership. The initial carrier, having issued the bill of lading, is generally in a more favorable situation for ascertaining that authority. There was no error committed in submitting the issue of negligence to the jury.

[3] It is also contended by the appellant that the real cause of the loss of the freight was the negligence of the Wolvin Line in failing to observe the instructions given as to the name of the proper consignee through other sources. Those issues were submitted to the jury, and its verdict involves a finding that the appellant's agent was negligent. And even though his negligence may not have been the sole cause of the loss of the goods, yet the appellant would be responsible if it concurred with that of the Wolvin Line in causing the loss.

The remaining assignments of error are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

[4] While we are not disposed to recede from any of the legal propositions upon which this judgment was affirmed, a more careful inquiry into the facts has convinced us of the insufficiency of the evidence to support the verdict of the jury. If the appellee's right to recover depends upon proof of a negligent failure on the part of the appellant's agent to give the correct name of the consignee of the goods as alleged in its original petition, it was also required to prove that such failure was the proximate cause of the loss of the goods.

The failure of the appellant's agent to give the correct name of the new consignee is conceded. But the question is, Has it been shown by satisfactory evidence that such failure was the proximate cause of the loss of the goods? It appears from the record that the goods arrived safely at Tampico, Mexico, on March 1st, where they were stored and held for some time thereafter for the payment of a Mexican import tax and the accrued charges; that this tax was never paid or its payment arranged for in any manner; and that the goods were sold for the purpose of satisfying those charges. The goods were destined to Columbus, which was a flag station about 40 miles from Tampico in the interior of Mexico. Under the regulations existing at the time the freight charges to that point were required to be paid in advance. The evidence shows that no arrangements had been made by the appellee for the payment of those charges. Warren, appellee's manager, testified that he expected to get the goods into Mexico without the payment of an import tax. It is therefore reasonable to infer that he had consigned them without stipulating for any such payments. It is true that McGill, an agent of the appellee, testified in its behalf that Murray, the party to whom the appellee intended to ship the goods, had called at Tampico, and in response to his inquiries was told that no goods were there for him. But the evidence fails to show

when he made those inquiries; neither is there any evidence that Murray was ready and willing to prepay the import tax and the freight charges to which the goods were subject. The only testimony tending to show the amount of this import tax places it at a sum about equal to the invoice value of the goods. Considering that fact and the further fact that the appellee expected the goods to go into Mexico duty free, it is not to be assumed without proof that Murray would have accepted them upon the conditions under which he would have been compelled to take them at Tampico. Moreover, it is made apparent that the testimony that Murray had called for the goods was hearsay. Our Supreme Court has held that such testimony, when unsupported, is insufficient to establish an essential fact. Henry v. Phillips, 105 Tex. 459, 151 S. W. 533. If that hearsay testimony should be disregarded, we then have no evidence that Murray ever called for the goods. If he did not, then it is reasonable to infer that the goods would have met the same fate had he been named as the consignee. We must assume that the shipper was fully aware in advance of the necessity for arranging for the payment of the taxes and charges required in ordering that the goods might go to their destination, unless it is made to appear that the consignee had assumed that burden. Furthermore, the testimony tends to show that soon after the goods left the port of Texas City in the latter part of February Warren had been furnished with a copy of the bill of lading, showing that the goods had been consigned to Ida Muller. In rebutting the evidence of that fact Warren merely stated that he did not remember receiving such a bill of lading. He admits, however, that he had been advised by the Wolvin Line of the arrival of the goods at Tampico and the amount of the customs the appellee would be required to pay, but failed to remember the date upon which he received that information. Beatty, the agent of the Wolvin Line, who testified by deposition, stated that on March 11th he telegraphed to Warren, and two days later he wrote him the following letter:

"Please see your telegram March 11 regarding car of crates shipped to Mrs. Ida Muller, Columbus, Mexico, diverted to A. E. Graham Forlorn, Mexico. This is to advise you that the shipment is now on hand at Tampico, Mexico, having been refused by consignee. Please advise disposition as soon as possible to avoid the storage accruing."

[5, 6] Evidently that letter and telegram furnished the information Warren received. This witness further testified that he had been instructed, after the arrival of the goods at Tampico, to divert them to A. E. Graham at Forlorn, Mexico, by a telegram from the appellee dated March 11, 1913, and that Graham had refused to receive the goods. The record shows that after that time no effort was made by the appellee to make any disposition of the goods. It is difficult to understand why the jury should disregard the positive statements of this witness, who testified by deposition, or infer a miscarriage of the mails from the mere statement of Warren that he did not remember receiving the communications which fully advised him as to how the goods had been billed out of Texas City. If the appellee knew or was in possession of facts from which it might be reasonably inferred that the goods had been billed to Ida Muller and were being held in Tampico for the charges to which they were subject, and made no effort to redeem or forward them, it cannot be said that the failure of the appellant's agent to correctly designate the new consignee in the order of diversion was the proximate cause of their loss. A re-examination of the record has convinced us that the evidence upon which the verdict of the jury rests is too unsatisfactory.

We do not pass upon those assignments of error which complain of an excessive verdict, as the determination of that question is not necessary in view of a new trial.

The judgment heretofore rendered affirming this case will be set aside, and the judgment of the trial court will be reversed, and the cause remanded.