### BRISTOW v. CITY INV. CO.

#### No. 10453.

Court of Civil Appeals of Texas. Galveston.

Nov. 11, 1937.

Rehearing Denied Dec. 16, 1937.

J. S. Bracewell, of Houston, for appellant.

J. C. Hutcheson, III, of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellee.

CODY, Justice.

This, is a suit in trespass to try title and to recover possession of 30 acres of land in Fort Bend county. The facts are these:

Both parties claim under George H. Moore as the common source of title. In 1926 Moore mortgaged the 30-acre tract involved in this suit, along with about 600 acres additional, to the Federal Land Bank to secure a loan of $11,500. The loan was payable on the amortization plan in something over 30 years. While it could be paid at the end of 5 years, or at other times specified in the mortgage after the 5-year period, there was no provision whereby the mortgagor could require any part of the property covered by the mortgage to be released except by paying off the entire indebtedness of $11,500. Moore then sold all the property covered by the mortgage to Hugh Wilkin, who assumed the payment of the $11,500. Thereafter, in May, 1928, Wilkin conveyed the 30-acre tract to P. P. Dawkins, and as a part of the consideration Dawkins gave his note for $4,000, payable in semiannual installments of principal of $200 each; that is, $200 of principal was to be paid every 6 months. This note was secured by a deed of trust, as well as a vendor's lien. This deed to Dawkins stated that it was made subject to the Land Bank mortgage, which the grantor expressly covenanted would be released in so far as it covered the 30 acres thereby conveyed, in accordance with the provision of the release clause in the Land Bank mortgage.

In October, 1929, Dawkins conveyed the 30-acre tract to appellant, who assumed the payment of the Dawkins $4,000 note. And in this conveyance the covenant was repeated about releasing the 30 acres from the Land Bank mortgage, in accordance with the provisions of its release clause. As there was no release clause in the Land Bank mortgage, this covenant is the cause of this suit. On June 17, 1930, Wilkin assigned the Dawkins note and the liens securing it to the Second National Bank of Houston. After appellant assumed the payment of the Dawkins note, and before Wilkin assigned it to the bank, appellant made payments on it to Wilkin. After the assignment, he made payments to the assignee bank until September 1, 1931, at which time appellant paid the interest due on the note, but failed to pay the installment of principal due on it, and has never paid any part of the principal since. After March 1, 1932, appellant has paid no interest on the note. The assignee bank accelerated the maturity of the note, and caused the deed of trust lien securing its payment to be foreclosed on July 3, 1934, and appellee bought the property in at the foreclosure sale. For purposes of this appeal we take it as true that, before appellant failed and refused to pay the installment of principal due on the note September 1, 1931, he demanded of the assignee bank that it obtain from the Land Bank a release of the 30 acres from the Land Bank mortgage. So far as the record in this case shows, the Land Bank mortgage is still in effect on the 30 acres.

At the conclusion of the trial, both parties moved for an instructed verdict; the court granted appellee's motion and denied appellant's. On appeal appellant urges the following grounds as cause for reversing the action of the trial court:

1. That the covenant in the deed from Wilkin to Dawkins, above referred to, was breached by the failure of Wilkin (and of his assignee, the Second National Bank) to pay off the Federal Land Bank loan at the end of the 5-year period, and that this breach relieved appellant from making further payments on the note, the payment of which he assumed. And that the foreclosure and sale under the deed of trust securing the payment of such note were nullities.

2. That, if the foreclosure sale was not invalid, the failure of Wilkin (and of assignee bank) to pay off the Federal Land

Bank mortgage entitled appellant either to remove his improvements off of the property, or to remain in possession long enough so that the rental value he enjoys will equal the value of his improvements, and of payments made, on the Dawkins note.

3. That the assignee bank was not the real owner of the Dawkins note but held it under a trust agreement which did not authorize it to foreclose, and the trial court erred in excluding evidence of such trust agreement.

4. That the court erred in overruling appellant's plea in abatement setting up nonjoinder of parties, which plea was filed the day of the trial.

Taking up the first ground appellant urges as cause for reversal; the covenant in the deed from Wilkin to Dawkins reads, "It is understood that the above described property, together with other lands' conveyed by George H. Moore and wife to Hugh Wilkin by the deed above referred to is subject to a deed of trust now held by the Federal Land Bank of Houston, Texas, which the grantor herein agrees will be released in so far as same covers the above described property, in accordance with the provisions of the release clause contained in said deed of trust."

While the Land Bank mortgage did not contain any partial release clause, it did contain the following anticipation of maturity clause: "It is agreed that after five years from the date upon which this loan is made the Mortgagors may, upon any regular installment date, make in advance, any number of payments, or any portion thereof, on account of the principal of this loan, as provided by this contract or pay the entire principal of such loan, under the rules and regulations of the Federal Farm Loan Board; such additional payments are not to reduce thereafter the periodical payments herein contracted to be made, but are to operate to discharge the loan at an earlier date by reducing the percentage applicable to interest and increasing the percentage applicable to principal. Such advance principal payment shall be used to discharge the first or next numbered and successive payments remaining unpaid, and it is agreed that such advance principal payment shall be made direct to The Federal Land Bank of Houston, and such payment shall automatically advance the maturity of the next succeeding semi-annual payment to the date that the first principal payment so made would have matured."

Appellant contends that the language used in the covenant, by which Wilkin agreed that the Land Bank mortgage would be released as to the 30 acres in accordance with the provisions of the release clause contained in that mortgage, meant that Wilkin bound himself to pay off the Land Bank loan of $11,500, at the earliest moment that it could be paid off under the mortgage. The language does not seem to be susceptible of the construction placed on it by appellant. It seems to indicate that the parties mistakenly believed that the Land Bank mortgage contained a partial release clause. Certainly if the parties in using the language of the covenant had the intention which appellant ascribes to them, the language they used was ambiguous. And before the court could accept the construction contended for by appellant, appellant would have the burden of pleading and proving that the parties, in using the ambiguous language, intended to register their will that Wilkin should pay off the Land Bank loan at the expiration of 5 years from its date, because this construction is an affirmative defense. Johnson v. Magnolia Petroleum Co. (Tex.Civ.App.) 75 S. W.2d 283; W. L. Macatee & Sons v. Chambers (Tex.Civ.App.) 69 S.W.2d 486; Indemnity Ins. Co. v. W. L. Macatee & Sons (Tex.Com.App.) 101 S.W.2d 553.

But even if appellant had pleaded and proved that in using the ambiguous language in question the parties intended that Wilkin should pay off the Land Bank mortgage at the end of 5 years from its date, it does not follow that the breach of such covenant would entitle the covenantee to the equitable remedy of rescission. The covenant by a grantor to procure a release from a specific outstanding incumbrance does not differ in principle from a covenant or warranty that the property conveyed is free of all incumbrances. Such a covenant is collateral to the conveyance. For the breach of a covenant contained in an executed conveyance, such as is involved here, the remedy is an action for damages, and not for rescission. Moore v. Cross, 87 Tex. 557, 29 S.W. 1051; Chicago, T. & M. C. R. R. Co. v. Titterington, 84 Tex. 218, 19 S.W. 472, 31 Am.St.Rep. 39; Luckenbach v. Thomas (Tex.Civ.App.) 166 S.W. 99; Biggs v. Doak (Tex.Civ. App.) 259 S.W. 665; James v. Lamb, 2 Tex.

Civ.App. 185, 21 S.W. 172; Hill v. Provine (Tex.Civ.App.) 260 S.W. 681. Appellant took his deed from Dawkins with actual knowledge of the existence of the Land Bank mortgage. He evidently trusted to the covenant in question to secure him against loss by reason of such incumbrance. So far as the showing in this record goes, the Land Bank mortgage is still in force, and has not been foreclosed. So far as the showing in this record goes, appellant was never prevented from making a sale of the 30 acres because of the mortgage. In other words, even though appellant trusted to the Wilkin covenant to secure him against loss because of the outstanding incumbrance, and even though the covenant be broken, there is no proof of loss suffered by appellant because the covenant has not been complied with. It may well be that it would be improvident on the part of appellant to continue further payments on the Dawkins note, with the mortgage outstanding. It may well be that it was improvident for appellant to have trusted to the Wilkin covenant in the first place. But we do not understand that this is the character of improvidence a court of equity will relieve against. Appellant's remedy is at law for such damages as he may have suffered by reason of a breach of the covenant. Apparently he has suffered none.

 In support of his contention that the Second National Bank never became the owner of the Dawkins note and therefore not entitled to have the deed of trust lien securing its payment foreclosed when appellant defaulted in making payment, appellant sought to introduce in evidence what purported to be a trust agreement between Wilkin and the bank, dated May 11, 1928. Mr. Henderson, an executive officer of the bank, working on what is called the trust side of the bank, testified that he had never seen the instrument until a few days before the trial, when he was shown by appellant's attorney what purported to be a copy of it. That since that time he had found an unexecuted copy in the bank's files on the commercial side of the bank in the old Hugh Wilkin file, that is, unexecuted by the bank, but signed by Wilkin. The instrument found by Mr. Henderson was the same as that given by Wilkin to appellant. George Moore, the original mortgagor, testified that he had heard Wilkin discuss the matter of subdividing the property, and told him that the Second National Bank was acting as trustee before any of the property was sold

off. The evidence of appellant was to the effect that Wilkin gave him the copy of the instrument sometime after the Dawkins note had been transferred to the bank, and after he had ceased making payments to Wilkin, and had made payments to the bank. The court sustained appellee's objection to the admission of this instrument in evidence, on the ground that it was hearsay. It is of course true that it was not necessary for the bank to have executed the instrument in order to have accepted its terms; and if it were shown by any competent evidence that the bank had accepted it, by acting on it or otherwise, it would have been error for the court to have excluded it. Slayden v. Stone, 19 Tex.Civ.App. 618, 47 S.W. 747; Hill v. Smith, 6 Tex.Civ.App. 312, 25 S.W. 1079. But appellant has cited no authority to indicate that mere possession of a file by the bank containing various papers belonging to Wilkin, among which this paper was found, its very existence being unknown to an executive of the trust department of the bank, the department in which the transaction would have been handled, is sufficient to render the instrument admissible, as though executed by or acted upon by the bank. Evidence that Wilkin had been heard to say that the property was being handled by the bank under some trust agreement relating to obtaining a release from the Land Bank mortgage is certainly hearsay, and therefore incompetent. United States Fidelity & Guaranty Company v. Inman (Tex.Civ.App. Eastland) 65 S.W.2d 339; Texas Midland Railway Company v. Cummer Mfg. Co. (Tex.Civ.App.) 207 S.W. 617; Panhandle & Santa Fe Ry. Co. v. Curtis (Tex.Civ.App.) 190 S.W. 837; 17 Texas Jurisprudence 520.

 Appellant contends that the statement was one against Wilkin's interest, and therefore admissible against his successors in title and interest. We fail to see how such statement could justly be said to have been against Wilkin's interest. On the contrary, it would appear to be a self-serving statement, and in his answer appellant alleged that Wilkin had represented that he had a trust agreement with the bank which had for its object the removal of the Land Bank's mortgage, and that this representation induced him to purchase the property. But aside from this, appellant by his testimony fixed the time of his conversation with Wilkin as being after the conveyance from Dawkins to himself, and

after Wilkins had transferred the Dawkins note to the Second National Bank. The court did not err in sustaining appellee's objection to the admission of the instrument in evidence. The court correctly sustained appellee's objection to the admission of the instrument.

We do not believe the court erred in overruling appellant's plea of nonjoinder of necessary parties, for we believe the parties, not joined in the suit, were not necessary. These parties were the surviving heirs of appellant's deceased wife. Thomas v. Quarles, 64 Tex. 491; Heirs of Tevis v. Armstrong, 71 Tex. 59, 9 S.W. 134.

The judgment will be affirmed.
Affirmed.

PLEASANTS, C. J., absent.